683 So.2d 209 (1996)
Alan M. HIPSCHMAN, Petitioner,
v.
Ron COCHRAN, Sheriff of Broward County, Dianne M. Hipschman, Jeffrey Hipschman, Alan Michael's Boca Collection, Inc., a Florida Corporation, and Alan Michael Jewelers, Inc., a Florida Corporation, Respondents.
No. 96-0529.
District Court of Appeal of Florida, Fourth District.
November 27, 1996.
*210 Nick B. Kanelidis, Fort Lauderdale, for petitioner.
Edward J. Jennings, Fort Lauderdale, for Respondent-Dianne Hipschman.
Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Hollywood, for RespondentRon Cochran, Sheriff of Broward County.

EN BANC
GROSS, Judge.
The petitioner husband seeks a writ of habeas corpus releasing him from custody on a pluries writ of arrest and commitment issued by the clerk of the circuit court. Because the writ issued without notice to the petitioner, contrary to the constitutional right of due process, we grant the petition. See LeNeve v. Navarro, 565 So.2d 836 (Fla. 4th DCA 1990).
On October 23, 1995, the trial court found the husband in contempt for failing to pay temporary alimony to the wife. The trial court determined that the husband was $10,540 in arrears, that he was in willful contempt of a previous court order and that he had the present ability to pay "temporary support as ordered by the court." The order required the husband to continue paying temporary alimony of $2,150 per month. The court ruled that the husband had the present ability to pay $4,000 toward the arrearage and it required him to make that payment within 30 days of October 10. The trial court ordered the husband to pay an additional $4,000 toward the arrearage within 60 days of October 10. The court made no finding of the husband's ability to pay the second $4,000 amount. If the husband failed to make any of these payments, including the ongoing temporary support payments, the order provided that,
upon Affidavit, executed by the Wife, or her counsel, of his failure to make any such payments as and when same become due, the Clerk of the Court shall forthwith issue a Writ of Bodily Attachment, commanding all appropriate law enforcement authorities to incarcerate the Husband in the Broward County Jail, for a period of sixty (60) days.
The order stated that after arrest, the husband would be able to purge the contempt and be released from jail upon the payment of $4,000 plus any sums due which were set forth in the affidavit of noncompliance executed by the wife or her lawyer.
After the entry of the order, the husband was twice incarcerated upon a capias issued by the clerk under the procedure specified in the October 23 order. On November 6, the *211 clerk issued a writ of arrest containing a $4,000 purge amount. On December 6, the clerk issued a writ of arrest with a $6,280 purge amount. The husband paid $4,000 upon being incarcerated but was not released by the sheriff because the two outstanding writs required purge payments totalling $10,280. On December 21, 1995, the trial court ordered the husband released from custody because the $4,000 purge had been paid. The trial court also ruled that the December 6 writ was "mooted." The husband contends he has paid the wife or her attorney $10,000 since October 23. The affidavit[1] which prompted the most recent capias claimed an arrearage of $13,400, which formed the basis of the purge amount in the "pluries writ of arrest and commitment" issued by the clerk.
We previously granted the writ and now write to explain our decision.

I
The capias under which the husband is now held is voidable because it was issued under a constitutionally infirm contempt order.
The purpose of civil contempt is not to punish, but to obtain compliance with a court order. Bowen v. Bowen, 471 So.2d 1274 (Fla.1985); Parsons v. Wennet, 625 So.2d 945 (Fla. 4th DCA 1993). Since civil contempt sanctions are "coercive and avoidable through obedience," they may be imposed in an ordinary civil proceeding after notice and an opportunity to be heard. International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, ___, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994); Bowen, 471 So.2d at 1277.
The October 23 order allowed the husband to be held in contempt and jailed for failing to make alimony payments which were to come due after October 23. It is clear that civil contempt orders may not provide for incarceration based on future, anticipated noncompliance with a court's periodic support order. Phillips v. Phillips, 502 So.2d 2 (Fla. 4th DCA 1986); Miller v. Miller, 587 So.2d 601 (Fla. 5th DCA 1991). There must be a hearing before incarceration, where a contemnor may challenge the allegation of noncompliance and defend on the ground that he does not have the present ability to pay under Bowen.
A second constitutional deficiency in the October 23 contempt order is that it provides that the clerk "shall" issue a warrant upon the filing of an affidavit by the wife or her attorney. In the area of civil contempt, due process requires that notice to the contemnor and an opportunity to be heard precede the imposition of sanctions, such as the issuance of an arrest warrant. International Union, 512 U.S. at ___, 114 S.Ct. at 2557; Shillitani v. United States, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966). Contempt jurisprudence requires that a judge determine the existence of a party's noncompliance with a court order. Only a judge can shut the cell door behind a contemnor, not the party who stands to gain from the contempt order.
Here, the clerk's issuance of a warrant upon the filing of an affidavit, without notice to the husband, violated due process because it deprived him of the opportunity to be heard on the matter of his noncompliance with the temporary relief order. See Phillips v. Phillips, 588 So.2d 9, 10 (Fla. 2d DCA 1991); Strauser v. Strauser, 303 So.2d 663, 664 (Fla. 4th DCA 1974).

II
We now turn to the issue of whether Hipschman was entitled to a second preincarceration hearing as to the first $4,000 in arrears, because the October 23 contempt order deferred incarceration and gave Hipschman until November 9 to purge the contempt by paying that amount to the wife. Although we hold that a pre-incarceration hearing was required under the facts of this case, we recede from our prior decisions to the extent that they indicate that a second pre-incarceration hearing is mandatory when *212 a court defers incarceration in a civil contempt proceeding.
We first note that we find no fault with that portion of the contempt order giving the husband until November 9 to purge the contempt. Some cases suggest that a contempt order may not defer incarceration to give a contemnor a chance to satisfy the purge amount. See Haymon v. Haymon, 640 So.2d 1204, 1206 (Fla. 2d DCA 1994); Cokonougher v. Cokonougher, 543 So.2d 460, 461 (Fla. 2d DCA 1989). This view overlooks the trial court's broad discretion under Bowen to fashion a remedy to obtain compliance with a court order. Bowen, 471 So.2d at 1279. It is not uncommon, for example, that a person needs time to sell an asset before having the ability to make a given payment. See Thompson v. Thompson, 576 So.2d 436 (Fla. 4th DCA 1991).
In Mertens v. Mertens, 596 So.2d 1285, 1286 (Fla. 4th DCA 1992), we held that:
Part of the contempt order, however, is impermissible to the extent that it allows for prospective incarceration without due process protection. Phillips v. Phillips, 502 So.2d 2 (Fla. 4th DCA 1986); Lang v. Lang, 404 So.2d 190 (Fla. 4th DCA 1981). As the order is now worded, the former husband is subject to incarceration without a prior hearing on his ability to purge himself of the contempt. In Thompson v. Thompson, 576 So.2d 436 (Fla. 4th DCA 1991), we held that a contempt order can defer punishment, but only so long as the trial court provides for another hearing before any imprisonment might actually begin. In this order, the trial judge failed to include this indispensable ingredient.
Mertens supports the view that, if incarceration is deferred for a chance to purge, a contemnor is always entitled to an additional pre-incarceration hearing on his purge ability before any incarceration can begin. We disagree.
A careful reading of Mertens demonstrates that we relied on cases where the court had ordered incarceration if the payor failed to make payments due in the future. These cases are not analogous to the situation where incarceration is ordered for noncompliance with past, accrued and unpaid support obligationsi.e., arrearages. As we indicated above, a contempt order may not hold someone in contempt and impose incarceration for anticipated nonpayment of future support obligations. For nonpayment of future support obligations, a hearing comporting with due process requirements is always necessary to determine both the fact of nonpayment and whether the defaulting payor has the ability to pay such amount before any incarceration may begin.
In Mertens, however, the incarceration was ordered only if the defaulting payor failed to pay the required amount of past due arrearages within a relatively brief purge period. At the contempt hearing, the trial court had already determined that the contemnor had not made court ordered payments and had the ability to purge within a short time frame. In this circumstance, due process does not automatically require a second hearing before arrest on the question of whether the contemnor has the ability to pay the purge amount. Neither constitutional principle, nor rule of procedure, nor common sense impose the requirement of an additional pre-incarceration hearing on a busy trial court to reconsider fact issues already determined. To the extent that Mertens can be read to mandate a second preincarceration hearing whenever incarceration is deferred, we recede from Mertens.
We recognize, however, that there are some circumstances in which a preincarceration hearing relating to the payment of past due arrearages is indispensable.[2] One such instance is that which occurred in this case, where the contempt order specifies compliance extra-judicially, i.e., by performance outside the auspices of the court or its *213 adjuncts.[3] Here, the court ordered the husband to make his purge payment directly to the wife. We believe that in this instance the court must allow an additional, pre-incarceration hearing on whether the contemnor has actually complied during the purge period. This is necessary to avoid the situation where the moving party misrepresents whether performance has been sufficient to comply, an occasion might arise in a hotly contested case where the temptation is great to use the court's coercive powers for the movant's own ends. There may be still other factual circumstances requiring another hearing before incarceration, which we leave to future cases and to the trial courts' discretion to address.
This case demonstrated the need for a preincarceration hearing. The parties disagreed as to what had been paid. The wife applied the husband's payments to periodic support under the temporary relief order, and not toward the purge amounts. The writs of arrest failed to account for previous writs, resulting in the confusion of multiple purge amounts of record in the court file.
The petition for writ of habeas corpus is granted, the pluries capias is quashed and the petitioner is ordered discharged from custody, without prejudice to further contempt proceedings.
GUNTHER, C.J., and GLICKSTEIN, DELL, STONE, WARNER, POLEN, FARMER, KLEIN, PARIENTE, STEVENSON and SHAHOOD, JJ., concur.
NOTES
[1] The affidavit filed was deficient on its face. It purported to be made by the wife on her own personal knowledge. However, it was not signed by the wife, but by her attorney, who only "acknowledged" the affidavit.
[2] Nothing we say is designed to prevent a contemnor from seeking an additional, pre-incarceration hearing to raise matters that have arisen during the purge period. A trial court has broad discretion to manage its own contempt order, since it is in the best position to realistically evaluate both the coercive effect of the sanction on the contemnor and the extent of the contemnor's ability to purge. The trial courts should always be sensitive to the right of the contemnor to show compliance or that he has since lost the capability to comply.
[3] The circumstance we have in mind here is where the court requires payment of specified sums directly to other former spouse or parent and outside the court registry, HRS, or central depository for receiving such payments. See § 61.181, Fla. Stat. (1995). When, however, the court specifies payment through the court registry or central depository, there is a neutral, objective source from which the question of payment can be determined.