807 A.2d 1

**Derrick D. LONG, Sr.**

v.

**STATE of Maryland.**

**No. 79, Sept. Term, 2000.**

Court of Appeals of Maryland.

Sept. 17, 2002.

Julia Doyle Bernhardt, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

C.J. Messerschmidt, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

The issue this case presents for resolution is the propriety of entry, by the Court of Special Appeals, as a consent judgment in settlement of a contempt case pending appeal, of an order that is inconsistent with the consent order filed by the parties. In September, 1999, the State filed in the Circuit Court for Washington County a petition for contempt alleging

that Derrick D. Long, Sr., the petitioner, was in contempt of court for failing to comply with that court's child support orders. Following a hearing in April 2000, the Circuit Court found the petitioner in constructive civil contempt and, notwithstanding its acknowledgment that he did not have the present ability to pay a purge amount, sentenced him to imprisonment for a specified period, subject to purger upon the payment of $700.

The petitioner noted an appeal to the Court of Special Appeals and, joined by the State, filed a joint motion to vacate the contempt order, together with a proposed consent order to facilitate the petitioner's immediate release from incarceration. As jointly requested, the intermediate appellate court vacated the petitioner's sentence; however, instead of entering the order submitted by the parties, it entered a modified order. That order remanded the case to the Circuit Court to determine conditions of release that would ensure the petitioner's appearance at further proceedings.

We granted the petitioner's Petition for Certiorari, *Long v. State*, 360 Md. 485, 759 A.2d 230 (2000), stayed enforcement of the Court of Special Appeal's order, and ordered the petitioner immediately released from incarceration. We shall reverse the judgment of the Court of Special Appeals.

## I.

The petitioner is the father of Kianna L. Long, born September 3, 1995. On March 14, 1997, the Circuit Court for Washington County ordered him to pay $25.00 per week for Kianna's support. The petitioner did not comply with this order, or subsequent support orders issued by the court.

When the petitioner, still not in compliance with the support orders, failed to appear at an enforcement hearing pertaining to one of the support orders, the State filed a petition, pursuant to Md. Rule 15–207(e),[1] requesting that he be held in

---

1. Maryland Rule 15–207 governs constructive contempt proceedings in general. Subsection (e), pertaining to constructive civil contempt proceedings based on nonpayment of child support, provides:

contempt. At the hearing on that petition, evidence was presented that the latest support order required the petitioner to pay support and an amount toward the arrears he had amassed, but that no payments had been made. The evidence also was that, although payments had been suspended during two periods when the petitioner was incarcerated,[2] the current amount of arrearage was $2,975.00. Admitting that he had no physical or mental impairment that prevented his working, that in May, 1999, "off and on," until his incarceration in

---

"Constructive civil contempt—Support enforcement action.—

"(1) Applicability.—This section applies to proceedings for constructive civil contempt based on an alleged failure to pay spousal or child support, including an award of emergency family maintenance under Code, Family Law Article, Title 4, Subtitle 5.

"(2) Petitioner's burden of proof.—Subject to subsection (3) of this section, the court may make a finding of contempt if the petitioner proves by clear and convincing evidence that the alleged contemnor has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing.

"(3) When a finding of contempt may not be made.—The court may not make a finding of contempt if the alleged contemnor proves by a preponderance of the evidence that (A) from the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment, or (B) enforcement by contempt is barred by limitations as to each unpaid spousal or child support payment for which the alleged contemnor does not make the proof set forth in subsection (3)(A) of this section.

"(4) Order.—Upon a finding of constructive civil contempt for failure to pay spousal or child support, the court shall issue a written order that specifies (A) the amount of the arrearage for which enforcement by contempt is not barred by limitations, (B) any sanction imposed for the contempt, and (C) how the contempt may be purged. If the contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payments on the arrearage at future times and perform specified acts to enable the contemnor to comply with the direction to make payments."

2. The petitioner was incarcerated, as he confirmed in his testimony, from September 6, 1999 through November 1, 1999. When he appeared for the hearing, he also was incarcerated, having been arrested on January 17, 2000 for driving while his license was suspended for nonpayment of child support, and being held due to his failure to appear at the earlier scheduled contempt hearing.

September, he worked at Labor Ready, and that if he were not incarcerated he would be able to return to that employment, the petitioner offered his intermittent incarceration and his inability to find employment following his release in November as the only explanation for failing to pay child support. He testified that he had no personal assets of any kind, including a car, and that the mortgage on his home, which he had owned with his mother and sister, had been foreclosed.

The court found the petitioner in contempt for his failure to pay child support from May 1999 to September 1999. Despite defense counsel's argument that imprisonment could not be the sanction for contempt, given the petitioner's inability to pay any purge amount, and specifically finding that the petitioner did not have the present ability to pay,[3] the court nevertheless sentenced him to incarceration in the Division of Correction, subject to his paying $700 to purge the contempt. It ruled:

> "All right, based on prior adjudications and the fact that okay, sure, he can't pay now 'cause he's in jail for failure to appear, which I've dismissed since I've found him in contempt, but there was just a blatant disregard back in May, June, July and August. I can't hide that. He's in contempt.... You seem to have a lot of problems not only not paying child support but apparently operating vehicles and everything else. If we can go out and buy a house and start paying on a house, we certainly can contribute money towards child support which apparently you didn't think you wanted to do. [It is the s]entence of this Court [that] you be committed to DOC for a period of thirteen months...."

The petitioner noted an immediate appeal to the Court of Special Appeals. While that appeal was pending, the petitioner and the State filed a Joint Motion to Vacate Sentence, in

---

**3.** During the proceedings, the court commented, in response to defense counsel's argument that the court could not continue the petitioner's incarceration due to his inability to pay a purge amount, that the petitioner "can pay 'cause he says he can go back to work at Labor Ready.' "

which they agreed, relying on *Thrower v. State ex rel. Bureau of Support Enforcement,* 358 Md. 146, 747 A.2d 634 (2000), that "the trial court did not find a present ability to purge, but, to the contrary, found that [the petitioner] lacked such an ability" and that "where [the petitioner] has been incarcerated [over four months] and lacks the ability to pay a purge, ... it is appropriate that he should be released immediately from incarceration." Attached to the motion was a proposed order, which, if signed, would have vacated the petitioner's sentence and ordered his immediate release, both without remand for further proceedings.[4]

Rather than the proposed order submitted by the parties, however, the Court of Special Appeals issued its own order, in which, after acknowledging the parties' agreement that the petitioner be immediately released from incarceration, the court vacated the Circuit Court contempt judgment, remanded the case to that court "for further proceedings that conform to the requirements of Md. Rule 15–207" and "ORDERED that [the petitioner] be taken without unnecessary delay to the Circuit Court for Washington County so a judge of that court can determine what—if any—conditions of release will reasonably assure [the petitioner's] appearance at those further proceedings required by this Order."

## II.

The petitioner, joined by the State, argues that, where the parties to civil contempt proceedings agree to settle the case while it is on appeal and submit their agreement to the court in the form of a proposed consent order,[5] the appellate

---

4. Md. Rule 2–612, pertaining to consent judgments, provides that "[t]he court may enter a judgment at any time by consent of the parties."

5. The overlapping terms, "judgment," "order," and "decree," though often used interchangeably, have different meanings. Maryland Rule 1–202(n) defines a "judgment" as "any order of court final in its nature entered pursuant to these rules." Generally, the term "order" refers to the written direction or command issued by the court, *see* Black's Law Dictionary 1123 (7th ed.1999), and filed with the court clerk, as

court may not enter a modified consent order that does not reflect the parties' agreement. Further, the petitioner maintains that, because the joint motion and proposed consent order filed by the parties were legally correct under *Thrower v. State, supra,* there was no basis for the Court of Special Appeals to reject any of its substantive provisions.

Moreover, the petitioner asserts, while the court to whom a consent order is submitted, the Court of Special Appeals in this case, properly may reject the proposed order, it does not have the authority to enter its own order disposing of the appeal. The entry of a modified order that does not give effect to the parties' agreement, he concludes, deprives the parties of the benefit of their bargain and, simultaneously, of the alternative right to litigate the case through briefing and oral argument on the merits. The State agrees generally with the latter point, but believes that, in this case, where the intermediate appellate court erred was in failing to afford the parties an opportunity to be heard on why their proposed order should be altered or to address, and remedy, any perceived deficiencies.

Finally, the petitioner argues that a court may not incarcerate a person pending a hearing pursuant to Md. Rule 15–207(e). He submits that, by ordering the case remanded for the trial court to "determine what—if any—conditions of release w[ould] reasonably assure [the petitioner's] appearance at those further proceedings required by [its] Order," the Court of Special Appeals authorized the petitioner's continued incarceration for constructive civil contempt, despite the uncontroverted evidence that he lacked the present ability to purge the contempt. The petitioner further challenges the broad remand ordered by the intermediate appellate court on the basis that it allows, contrary to Md. Rule 15–207 and this Court's cases, the trial court to order his continued incarcera-

---

required by Md. Rule 2–601. The term "decree," which traditionally referred to a judicial decision in a court of equity, as contrasted with a judgment of a court of law, may be used to refer to any judgment or court order. *See* Black's Law Dictionary 419 (7th ed.1997).

tion upon a finding that that is the only way to ensure his appearance at further contempt proceedings.

## III.

A consent judgment or consent order is an agreement of the parties with respect to the resolution of the issues in the case or in settlement of the case, that has been embodied in a court order and entered by the court, thus evidencing its acceptance by the court.[6] *Jones v. Hubbard,* 356 Md. 513, 529, 740 A.2d 1004, 1013 (1999); *Chernick v. Chernick,* 327 Md. 470, 478, 610 A.2d 770, 774 (1992) ("Consent judgments or decrees are essentially agreements entered into by the parties which must be endorsed by the court.") *See* Black's Law Dictionary 846 (7th ed.1999); *Montgomery County v. Revere Nat'l Corp.,* 341 Md. 366, 378, 671 A.2d 1, 7 (1996). Consent judgments are hybrids, having attributes of both contracts and judicial decrees. *Chernick,* 327 Md. at 478, 610 A.2d at 774. While this "dual character ... has resulted in different treatment for different purposes," *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405, 421 (1986), consistent with other courts that have addressed the issue, *see Jones,* 356 Md. at 530–32, 740 A.2d at 1013–14, this Court has repeatedly held that "consent judgments should normally be given the same force and effect as any other judgment, including judgments rendered after litigation." *Jones,* 356 Md. at 532, 740 A.2d at 1014. *See Kirsner v. Fleischmann,* 261 Md. 164, 170–71, 274 A.2d 339, 343 (1971). Thus, "[a] consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments

---

**6.** "[A] consent judgment is a judgment and an order of court. Its only distinction is that it is a judgment that a court enters at the request of the parties." *Jones v. Hubbard,* 356 Md. 513, 528, 740 A.2d 1004, 1013 (1999).

and decrees." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378, 112 S.Ct. 748, 757, 116 L.Ed.2d 867, 882 (1992).

This is not to say that the contractual aspect of the consent judgment is unimportant. On the contrary, the consent judgment memorializes the agreement of the parties, pursuant to which they have relinquished the right to litigate the controversy in exchange for a certain outcome and/or, perhaps, expedience. In *United States v. Armour & Co.,* the United States Supreme Court explained:

> "Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation."

402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256, 263 (1971) (footnote omitted).

It is the parties' agreement that defines the scope of the decree. When there is an issue as to the scope of the judgment, therefore, it is to the parties' agreement that we

look and interpret. Where the agreement is embodied in the judgment, the court having approved it, without modification, construction of the judgment is construction of the agreement of the parties. Where, however, as here, the court has modified the agreement, we look to the agreement as submitted by the parties. In either case, we determine what the parties meant by what they plainly and unambiguously expressed, not what they intended the agreement to mean. *Roged, Inc. v. Paglee,* 280 Md. 248, 254, 372 A.2d 1059, 1062 (1977). This is the objective test of contract interpretation, the rule in Maryland: "[t]he written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake." *Slice v. Carozza Properties, Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958). *See Langston v. Langston,* 366 Md. 490, 506–07, 784 A.2d 1086, 1095 (2001); *Taylor v. NationsBank, N.A.,* 365 Md. 166, 178, 776 A.2d 645, 653 (2001); *Wells v. Chevy Chase Bank, F.S.B.,* 363 Md. 232, 251, 768 A.2d 620, 630 (2001); *Auction & Estate Reps., Inc. v. Ashton,* 354 Md. 333, 340–41, 731 A.2d 441, 445 (1999); *Calomiris v. Woods,* 353 Md. 425, 436, 727 A.2d 358, 363 (1999).

We have stated that "[a]s long as the basic requirements to form a contract are present, there is no reason to treat such a settlement agreement differently than other contracts which are binding." *Clark v. Elza,* 286 Md. 208, 219, 406 A.2d 922, 928 (1979). In *Chernick v. Chernick,* 327 Md. 470, 610 A.2d 770 (1992), we held that where parties "stipulate to terms embodied in a proposed consent order, the fact that a court must approve and sign the order does not affect the parties' ability to reach a valid agreement." *Id.* at 479, 610 A.2d at 774.

Treating settlement agreements in civil cases contemplating a consent judgment, including their interpretation, as any other binding contract "is consistent with the public

policy dictating that courts should look with favor upon the compromise or settlement of law suits in the interest of efficiency and economical administration of justice and the lessening of friction and acrimony." *Elza,* 286 Md. at 219, 406 A.2d at 928 (quoting *Chertkof v. Harry C. Weiskittel Co.,* 251 Md. 544, 550, 248 A.2d 373, 377 (1968), *cert. denied,* 394 U.S. 974, 89 S.Ct. 1467, 22 L.Ed.2d 754 (1969)); *see also Porter Hayden Co. v. Bullinger,* 350 Md. 452, 466–67, 713 A.2d 962, 969 (1998) ("the policy of this State is to encourage parties to negotiate compromises or settlements of law suits"); *General Motors v. Lahocki,* 286 Md. 714, 727, 410 A.2d 1039, 1046 (1980) ("The public policy is to encourage settlements."); *Sisson v. Baltimore,* 51 Md. 83, 95–96 (1879) ("The law always favors compromises and amicable adjustments of disputes, rather than compel parties to resort to litigation and it would be strange if, in the absence of clear evidence of fraud or mistake, the parties were not bound and concluded after what has taken place in respect to this award."). The public policy of encouraging settlements is so strong that settlement agreements will not be disturbed even though the parties may discover later that settlement may have been based on a mistake or if one party simply chooses to withdraw its consent to the settlement. *Chernick v. Chernick,* 327 Md. 470, 481–83, 610 A.2d 770, 775–76 (1992). In *Fiege v. Boehm,* 210 Md. 352, 360, 123 A.2d 316, 321 (1956), citing *Hartle v. Stahl,* 27 Md. 157, 172 (1867), our predecessors noted: "(1) that forbearance to assert a claim before institution of suit, if not in fact a legal claim, is not of itself sufficient consideration to support a promise; but (2) that a compromise of a doubtful claim or a relinquishment of a pending suit is good consideration for a promise; and (3) that in order to support a compromise, it is sufficient that the parties entering into it thought at the time that there was a *bona fide* question between them, although it may eventually be found that there was in fact no such question." *See also McClellan v. Kennedy,* 8 Md. 230 (1855).[7]

---

7. There, this Court, quoting 1 Story's, Commentaries on Equity §§ 131–32, said:

■ Ordinarily, no appeal will lie from a consent judgment.[8] *Osztreicher v. Juanteguy,* 338 Md. 528, 534, 659 A.2d 1278, 1281 (1995); *Globe American v. Chung,* 322 Md. 713, 716–17, 589 A.2d 956, 957 (1991); *see also Franzen v. Dubinok,* 290 Md. 65, 68, 427 A.2d 1002, 1004 (1981); *Long v. Runyeon,* 285 Md. 425, 429–430, 403 A.2d 785, 788 (1979); *Suburban Dev. Corp. v. Perryman,* 281 Md. 168, 171, 377 A.2d 1164, 1165 (1977); *First Federated Commodity Trust Corp. v. Comm'r,* 272 Md. 329, 332, 322 A.2d 539, 542 (1974); *Lohss and Sprenkle v. State,* 272 Md. 113, 118–119, 321 A.2d 534, 538 (1974); *Rocks v. Brosius,* 241 Md. 612, 630, 217 A.2d 531, 541 (1966); *Mercantile Trust Co. v. Schloss,* 165 Md. 18, 24, 166 A. 599, 601 (1933). This is so because "entry of a judgment by consent implies that the terms and conditions have been agreed upon" and that the parties have consented to its entry. *Chernick,* 327 Md. at 484, 610 A.2d at 776. By agreeing to settle their dispute, the parties give up any meritorious claims or defenses they may have had in order to avoid further litigation. *E.g., Fiege v. Boehm,* 210 Md. 352, 360, 123 A.2d 316, 321 (1956).

■ On the other hand, a court's refusal to enter a consent judgment submitted by the parties is reviewable for an abuse of discretion. *E.g., State v. Smith,* 295 N.J.Super.

---

" 'If compromises are otherwise unobjectionable they will be binding, and the right will not prevail against the agreement of the parties, for the right must always be on one side or the other, and there would be an end of compromises if they might be overthrown upon any subsequent ascertainment of right contrary thereto.' The doctrine of compromises rests on this foundation."
*Id.* at 248, 740 A.2d 1004.

**8.** The right to appeal in a contempt case is governed by Maryland Code (1974, 1998 Replacement Volume) § 12–304 of the Courts and Judicial Proceedings Article. It provides:
"(a) Any person may appeal from any order or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court, including an interlocutory order, remedial in nature, adjudging any person in contempt, whether or not a party to the action.
"(b) This section does not apply to an adjudication of contempt for violation of an interlocutory order for the payment of alimony."

399, 407, 685 A.2d 73, 77 (1996); *United States v. City of Alexandria*, 614 F.2d 1358, 1361–62 (5th Cir.1980); *United States v. City of Miami, Florida*, 614 F.2d 1322, 1331 (5th Cir.1980); *rehearing en banc, United States v. City of Miami, Florida*, 664 F.2d 435, 441 (5th Cir.1981) (per curiam); *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir.1985); *Securities and Exchange Commission v. Randolph*, 736 F.2d 525, 529 (9th Cir.1984). Generally, the test to be applied by the trial court is whether the settlement reached by the parties is "fair, adequate, and reasonable." *United States v. City of Miami, Florida*, 614 F.2d at 1330. *See Randolph*, 736 F.2d at 529 ("Unless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved"), *Donovan*, 752 F.2d at 1177 (decree is "reasonable").

 Moreover,

"[w]hile the court may either approve or deny the issuance of a consent decree, generally it is not entitled to change the terms of the agreement stipulated to by the parties. . . . If the court discerns a problem with a stipulated agreement, it should advise the parties of its concern and allow them an opportunity to revise the agreement."

*United States v. Colorado*, 937 F.2d 505, 509 (10th Cir.1991) (citations omitted). *See Plummer v. Chemical Bank*, 668 F.2d 654, 655 n. 1 (2d Cir.1982) ("the district court judge should not take it upon himself to modify the terms of the proposed settlement decree, nor should he participate in any bargaining for better terms") (citation omitted); *United States v. City of Miami, Fla.*, 664 F.2d at 441 (in approving a settlement, trial court "need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties. Objectors must be given reasonable notice and their objections heard and considered"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998) ("The settlement must stand or fall in its entirety."); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir.1982) (The court does not have the authority "to delete,

modify or substitute certain provisions," rather, the settlement must stand or fall in its entirety.); *see also Thibbitts v. Crowley,* 405 Mass. 222, 539 N.E.2d 1035, 1038–39 (1989); *In re Liquidation of Nat'l Colonial Ins. Co.,* 20 Kan.App.2d 802, 892 P.2d 926, 928–29 (1995); *Tridyn Industries, Inc. v. American Mutual Liability Insurance Company,* 46 N.C.App. 91, 264 S.E.2d 357, 359 (1980); *McEntire v. McEntire,* 706 S.W.2d 347, 350 (Tex. Ct. of App. 4th Dist.1986); *Haller v. Wallis,* 89 Wash.2d 539, 573 P.2d 1302, 1305 (1978). Thus, an appeal lies when, as here, the court, rather than the consent judgment proposed, enters another, modified one. *Thibbitts,* 539 N.E.2d at 1037, n. 5.[9]

 The Motion to Vacate Sentence embodied the parties' agreement in resolution of this civil contempt case. It, together with the proposed order, constituted the consent judgment which they requested the Court of Special Appeals to enter. As we have seen, the consent judgment would have vacated the petitioner's sentence and ordered his immediate release from incarceration. It did not provide for remand to the Circuit Court for further proceedings. It was for this outcome for which the petitioner bargained, giving up his right to litigate the civil contempt finding entered against him.

Instead of entering the consent judgment as submitted, the intermediate appellate court modified it and, as modified, entered it. While vacating the petitioner's sentence as the consent judgment requested, rather than ordering his immediate release as the consent judgment also requested, the court remanded the case for further civil contempt proceedings [10] and a pretrial determination of the petitioner's eligibility for

---

9. Appeal also lies from an order striking a judgment or decree that has become enrolled from an order refusing to set aside such an enrolled judgment or decree. *First Federated Commodity Trust Corp. v. Commissioner of Securities for Maryland,* 272 Md. 329, 333, 322 A.2d 539, 543 (1974)

10. It is interesting to note that the State did not negotiate, and, therefore, apparently did not contemplate or desire, a remand for further proceedings. Clearly, it is the State that ordinarily determines whether and when to initiate civil contempt proceedings.

release pending those proceedings. The court apparently noticed a void in the agreement reached by the parties and, by its modified order, sought to fill it.

We agree with the petitioner and the State that the Court of Special Appeals erred when it entered the modified order rather than the proposed consent order jointly submitted by the parties. The modified order materially altered the agreement reached by the parties: by ordering a remand for further proceedings and a pretrial release determination, it is totally inconsistent with their agreement that the petitioner be released immediately from incarceration. Thus, as the parties correctly point out, by entering the modified consent order the intermediate appellate court improperly substituted its own judgment for that of the parties, and, in the process, undermined the settlement agreement at issue, and consent judgments in general, contrary to the State's longstanding policy of encouraging settlements. As to this, we are mindful of our admonition in *Roged, Inc. v. Paglee,* 280 Md. 248, 372 A.2d 1059 (1977), where we held that a trial court properly declined to hear evidence regarding the construction of a consent decree because if, in fact, the decree "failed to provide for certain contingencies, this was a void to be filled by the draftsmen, not by the courts." *Id.* at 254, 372 A.2d at 1062. That action also deprived both of them of the benefit of their bargain and the petitioner of the alternative right to litigate the dispute.[11]

Furthermore, because the purpose of imprisoning the contemnor is remedial, *Lynch v. Lynch,* 342 Md. 509, 519, 677 A.2d 584, 589 (1996), i.e., "to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily to benefit such parties," *Jones v. State,* 351 Md. 264, 279–80, 718 A.2d 222, 230–31 (1998), this Court consistently, and emphatically, has held that a civil contemnor may be incarcerated only when he or she has been

11. In addition to their settlement concerns, both the petitioner and the State, especially the State, are interested in assuring that the law is followed, as the Joint Motion to Vacate Sentence makes clear.

found to have "the present ability to purge the contempt." *Thrower*, 358 Md. at 160–61, 747 A.2d at 643; *Jones*, 351 Md. at 281, 718 A.2d at 231; *Lynch*, 342 Md. at 520, 677 A.2d at 590; *Ott v. Frederick County Dept. of Social Services*, 345 Md. 682, 688–89, 694 A.2d 101, 105 (1997); *Rutherford v. Rutherford*, 296 Md. 347, 357, 464 A.2d 228, 233 (1983); *Elzey v. Elzey*, 291 Md. 369, 374, 435 A.2d 445, 447 (1981); *State v. Roll & Scholl*, 267 Md. 714, 728, 298 A.2d 867, 876 (1973); *Soldano v. Soldano*, 258 Md. 145, 146, 265 A.2d 263, 264 (1970); *Johnson v. Johnson*, 241 Md. 416, 420, 216 A.2d 914, 917 (1966). We pointed out in *Thrower*, 358 Md. at 160, 747 A.2d at 643, that incarceration for non-support "obviously impinges upon the liberty interest that parents have under the Fourteenth Amendment to the U.S. Constitution, under the Maryland Constitution, and under Maryland common law, and thus must comport with both procedural due process and with the non-Constitutional procedures ordained by this Court."

In *Jones*, we stated: "Before incarceration is imposed, the contemnor must be provided with the opportunity to show that he or she is unable, rather than unwilling, at that time, to make the court-ordered payments." 351 Md. at 281, 718 A.2d at 231. An order incarcerating a defendant without regard to his or her ability to comply with the obligation underlying it smacks of a criminal sanction, imposed without the constitutionally required protections. *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1430, 99 L.Ed.2d 721, 732 (1988).

Having vacated the petitioner's sentence, that portion of the court order that remands the case to the Circuit Court for further proceedings and requires the petitioner to be processed for pretrial release necessarily has the effect of incarcerating the petitioner without a hearing and, therefore, without an opportunity to "show that he or she is unable, rather than unwilling, at th[is] time, to make the court-ordered payments." Moreover, because the pretrial release decision is entrusted to the discretion of the court, to determine "what— if any—conditions of release will reasonably assure the [petitioner's] appearance at those further proceedings," it is con-

ceivable that the petitioner may remain incarcerated throughout the further proceedings. Neither of these situations is contemplated nor authorized by Maryland Rule 15–207(e) or our cases. Both violate due process. Accordingly, the Court of Special Appeals, lacking the authority to order the petitioner's detention pending further civil contempt proceedings, erred.

The cases from other jurisdictions are in accord. *Vermont National Bank v. Taylor,* 122 N.H. 442, 445 A.2d 1122, 1125 (N.H.1982); *Hipschman v. Cochran,* 683 So.2d 209, 211 (Fla. 4th Dist.Ct.App.1996); *Armstrong v. Squadrito,* 152 F.3d 564, 576 (7th Cir.1998). In *Hipschman,* explaining the invalidity of the contempt order, on the basis of which the petitioner was arrested and detained, the court pointed out: "In the area of civil contempt, due process requires that notice to the contemnor and an opportunity to be heard precede the imposition of sanctions, such as the issuance of an arrest warrant." 683 So.2d at 211. Similarly, the Supreme Court of New Hampshire, in *Vermont National Bank,* observed:

"If procedural due process requires notice and a prior opportunity to be heard when dealing with the attachment of property, it certainly requires those same safeguards when personal liberty is restrained, an undoubtedly more severe infringement of an individual's rights than the attachment of property.... Because the ex parte capias procedure used by the Keene District Court to initiate civil contempt proceedings against the defendants resulted in Lorraine Taylor's arrest before she had notice or any opportunity to be heard on her present ability to pay the judgment, use of the writ in this case was unconstitutional."

445 A.2d at 1125 (citations omitted).

To be sure, the Court of Special Appeals was concerned that the petitioner would not appear for further child support proceedings, a valid concern in light of the petitioner's repeated failure to comply with existing child support orders or to appear at previous proceedings. We share the intermediate appellate court's concern with respect to the petitioner, in

particular, as well as to countless other parents that regularly breach the duty to pay child support. As Judge Wilner explained in *Thrower v. State, supra,* 358 Md. at 160, 747 A.2d at 642:

> "Enforcement of that obligation, when enforcement is required, has never been easy. It is a significant problem that has plagued the nation and this State for many years. Studies have been conducted, volumes have been written, and laws have been enacted by both Congress and the State legislatures. Efforts to induce compliance are multi-faceted, ranging from employment counseling and other programs designed to. assist in voluntary compliance, to a variety of intermediate coercive techniques, including wage liens, the interception of tax refunds and other governmental payments, and the suspension of various licenses and privileges, to the ultimate and most traditional device of threatening or actually imposing incarceration, either through ordinary criminal proceedings or, when the duty of support has been formalized in a court order, through criminal or civil contempt proceedings. The ultimate objective of all these efforts and techniques, including those that are truly punitive in nature, is not to punish the parent but to provide support for the children."

Judge Wilner further cautioned:

> "[I]t may be frustrating to judges and masters to have to deal with people who appear to be deliberately ignoring their child-support obligations, by spending available funds for other purposes, by voluntary impoverishment, by refusing to obtain steady employment, or by other techniques-people who return time and again with excuses that the judge or master finds incredible or inadequate and who thus seem to flaunt their defiance of properly entered court orders. Nonetheless, because a person's liberty is at stake and because it is a judicial proceeding, both the form and substance of due process and proper judicial procedure must be observed. Shortcuts that trample on these requi-

sites and conclusions that are based on hunch rather than on evidence are not allowed."

*Id.* at 160–61, 747 A.2d at 642.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE STATE OF MARYLAND.