IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,    :
            :  I.D. No 1801003781
   v.         :  Kent County
            :
MARVIN D. SPADY,     :
            :
   Defendant.    :

Submitted: August 27, 2018
Decided: October 8, 2018

## ORDER

Upon Defendant's Motion to Suppress.
*Granted.*

Gregory R. Babowal, Esquire, Department of Justice, Dover, Delaware; attorney for the State of Delaware.

Stephanie H. Blaisdell, Esquire, Office of the Public Defender, Dover, Delaware; attorney for the Defendant.

WITHAM, R.J.

## INTRODUCTION

Before this Court is Defendant Spady's ("Defendant") motion to suppress evidence pursuant to a search warrant executed at his residence on January 10, 2018. Defendant argues information contained within the four corners of the affidavit supporting the search warrant did not establish probable cause.

Presently, this Court finds that the information set forth within the warrant's affidavit did not establish probable cause and thus Defendant's motion to suppress is *granted*.

## FACTUAL AND PROCEDURAL BACKGROUND

Detective Timothy Webb ("Webb") became interested in Defendant between December 2017 and January 2018, after he was contacted by a confidential informant ("CI") who advised him that Defendant and Jennifer Sparacio were selling crack-cocaine and heroin at their residence, 10-2B NW Front Street, Milford, Delaware. CI's information was not corroborated by any surveillance at the address or additional investigation.

Webb and CI met a short time after and again, CI passed information pertaining to Defendant's drug activities, adding that he could purchase heroin from him.[1] After verifying CI was free of contraband and money, Webb arranged a "controlled purchase." CI, while under Webb's "constant surveillance,"[2] entered 10 NW Front

---

[1] D. Ex. A at 5.

[2] *Id.* at 5. Webb's surveillance was not "constant." Webb states in his affidavit, "[y]our affiant then observed CI *walk into the front door* of 10 NW Front Street. Minutes later, CI exited the

Street and emerged a few minutes later with heroin.[3]

In December 2018, CI contacted Webb again, and disclosed that Defendant and Sparacio were selling crack-cocaine.[4] Once again, Webb did not conduct an investigation to corroborate CI's claim before setting up a "controlled purchase."[5] As before, Webb verified that CI was free of contraband and money before CI made the purchase.[6] Under Webb's "constant surveillance," CI entered 10 NW Front St., and emerged minutes later with heroin and crack-cocaine.[7] The only investigation Webb undertook was to verify Defendant's identity with CI.[8]

After the second "controlled purchase," Webb successfully obtained a search warrant to search 10-2B NW Front Street, Milford, Delaware. Upon execution of the search warrant, Webb discovered, amongst other items, 70.031 grams of heroin, two glass crack pipes, a digital scale, two spoons with drug residue, and Spady's

---

building and returned to [me] at a predetermined location, *all while under constant surveillance."* (Emphasis added.)

[3] The record is silent as to if Defendant was further investigated.

[4] D. Ex. A at 6. Note, the Affidavit should read 2017.

[5] *Id.*

[6] *Id.*

[7] *Id.* Webb's "constant surveillance" in December 2017 was identical to the previous operation.

[8] *Id.* Webb stated that CI confirmed Defendant's identity after viewing a photograph. The facts are unclear as to when this occurred.

corrections identification.[9]  Defendant was arrested and charged with: (1) drug dealing; (2) tier 5 possession; and (3) possession of drug paraphernalia.[10]

## STANDARD OF REVIEW

In a motion to suppress that challenges a search warrant, the defendant bears the burden of proving that the challenged search or seizure was unlawful.[11]  Here, Defendant contends that the search warrant was not supported by probable cause. Thus, it is his burden to establish by a preponderance of the evidence that he is entitled to relief under that standard.[12]

Under the Delaware Constitution, a search warrant may only be issued upon demonstrating probable cause.[13]  The search warrant must be supported by a sworn affidavit that establishes sufficient cause for the warrant's issuance.[14]

To determine whether a search warrant application establishes probable cause, Delaware Courts employ the "four-corners" test.[15]  Under this test, sufficient facts

---

[9] D. Ex. A at 1.

[10] Arraignment by Written Pleading.

[11] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005).

[12] *State v. Darling*, 2007 WL 1784185, at *1 (Del. Super. June 8, 2007), as corrected (July 3, 2007).

[13] Del. Const., art. 1, § 6.

[14] 11 *Del. C.* §§ 2306 & 2307.

[15] *State v. Johns*, 2014 WL 7740459, at *2 (Del. Super. Nov. 25, 2014).

*State v. Marvin D. Spady*
I.D. No. 1801003781
October 8, 2018

must appear on the face of an affidavit, such that a reviewing court can verify the factual basis for a determination that probable cause exists.[16] The magistrate issuing a warrant "must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit—including the veracity and the basis of knowledge of persons supplying hearsay information—there is a fair probability that contraband or evidence of a crime will be found in a particular place.[17] However, they may make reasonable inferences from those *factual allegations*.[18] The Court must "ensure that the magistrate had a substantial basis for concluding that probable cause existed."[19] As such, a "magistrate's determination of probable cause 'should be paid great deference by [the] reviewing court' ... and should not, therefore, 'take the form of a de novo review.'"[20]

To that end, a confidential informant's tip can provide probable cause, if the

[16] *Sisson*, 883 A.2d at 876 (citing *Pierson v. State*, 338 A.2d 571, 573 (Del.1975)).

[17] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (citing *Illinois v. Gates*, 462 U.S. 213, 237 (1984)).

[18] *Rybicki v. State*, 119 A.3d 663, 668-69 (Del. 2015) (citing *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).

[19] *Le Grande*, 947 A.2d at 1108 (quoting *Sisson*, 903 A.2d at 296); accord *Gates*, 462 U.S. at 238–29 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed.") (citation omitted)).

[20] *Holden*, 60 A.3d at 1114 (quoting *Gates*, 462 U.S. at 238–239, (1984)).

totality of the circumstances establishes the tip's reliability.[21] In making a determination, this Court must consider the informant's reliability, the tip's details, and the degree to which the tip is corroborated by independent police surveillance and investigation.[22] If an informant's tip is sufficiently corroborated by independent police work, it may demonstrate probable cause, even if nothing is known about the informant's credibility.[23]

## DISCUSSION

Defendant moves to suppress evidence found during the execution of the search warrant obtained by Webb. He argues that the four corners of the affidavit in support of the search warrant do not establish probable cause. Specifically, Defendant contends that the lack of police corroboration of CI's claims, coupled with insufficient surveillance, failed to establish probable cause.[24] State contends the "controlled purchases" are enough to establish probable cause because CI was under "constant surveillance" during the controlled purchases.[25]

---

[21] *State v. Crippen*, 2016 WL 344458, at *3 (Del. Super. June 15, 2016) citing *Holden*, 60 A.3d at 1115.

[22] *Id.*

[23] *Le Grande v. State*, 947 A.2d 1103, 1108 (Del. 2008) (citing *Hubbard v. State*, 782 A.2d 264, (Del. Super. Sept. 5, 2001); *see also McAllister v. State*, 807 A.2d 1119, 1124 (Del. 2002) ("An informant's tip that is corroborated by independent police work can form the basis for probable cause, regardless of what is known about the informant's personal credibility or reliability.")).

[24] D. Mot. at ¶¶ 8 - 10.

[25] St. Reply at ¶ 9.

It appears at first glance that CI's information was corroborated by the "controlled purchases." CI was independently surveilled by Webb on two separate occasions.[26] These "controlled purchases" constituted some investigation by Webb, which corroborated CI's claims that Defendant was selling heroin and crack-cocaine out of the residence. CI's information might have also been somewhat corroborated by his positive identification of Defendant.[27] Finally, CI was successful in both "controlled purchases," by obtaining heroin and crack-cocaine.

However, looks can be deceiving. And here, a deeper dive into the record shows Webb's affidavit may have been inadequate to establish probable cause.

First, the State argues that CI was under "constant surveillance" during the "controlled purchases."[28] However, this is not accurate. In fact, the State's contention directly contradicts Webb's affidavit where he stated that he was not physically present with CI during the "controlled purchases," but that he "watched" CI enter and leave 10 NW Front Street.[29]

Second, Defendant's claim regarding the layout of 10 NW Front Street is insightful and supports his argument. Webb's affidavit states that he sought to search 10 2-B NW Front Street based on information provided to him by CI and further used

---

[26] Affidavit Justification to Justice of the Peace #6 ¶¶ 3-4.

[27] *Id.* at ¶ 5. As stated above, the facts are not completely clear as to this point.

[28] St. Reply at ¶ 9.

[29] Affidavit Justification to Justice of the Peace #6 ¶¶ 3-4.

as the basis of the "controlled purchases." However, as the Defendant points out in his motion,[30] two businesses occupy the first level.[31] Both of these businesses are accessible through the front entrance. Additionally, the building's three apartments, including Defendant's, are on the upper levels.[32] The apartments, like the businesses, are accessible through the front entrance of the building. As such, it is conceivable that CI could have entered through the front entrance as Webb stated, but yet entered one of the businesses undetected.

Defendant further contends that even if Webb had been standing on the bottom level by a stair case's base, while CI went up for the "controlled purchase," it would have been impossible to see who CI interacted with or what apartment he may have entered.[33] In refuting Defendant's claim, the State provides no clarifying information on the type of surveillance that actually was conducted on CI during the sale other than regurgitating Webb's affidavit. As discussed, the affidavit itself is silent to any additional facts regarding any surveillance that it conducted regarding CI when he entered into the building other than it was "constant."

In order for CI to have been constantly surveilled, Webb would have to have been physically present with CI, within 10 NW Front Street, at the time of both

---

[30] D. Mot. at ¶ 9.

[31] Google Earth Image 10 NW Front St. Milton, DE. The businesses appear to be a barber shop and some sort of wellness clinic.

[32] D. Mot. at ¶ 9. The layout of the apartments could not be verified by Google Earth.

[33] D. Mot. at ¶ 9.

"controlled purchases" to definitively verify that CI purchased the heroin and crack-cocaine from Defendant. The fact that CI identified Defendant from a photograph still does not get around the fact that once in the building, CI could have gone to any one of five places. However, Webb was not physically present with CI, and thus can not definitively say that CI was under "constant surveillance" or, more importantly, that he purchased drugs from Defendant.

Under the circumstances, these facts dispute the facts stated by Webb and used by the magistrate in his analysis in granting the search warrant to Webb. It appears that CI is not mentioned as a "past, proven, and reliable" informant by Webb or any other law enforcement officer. It also does not appear that any further investigation was conducted before enlisting CI.

## CONCLUSION

For the above stated reasons, based solely on the record and the motion and response filed, Defendant's motion to suppress is **GRANTED**.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:   Prothonotary
      Gregory R. Babowal, Esquire
      Stephanie H. Blaisdell, Esquire