829 A.2d 540

## SY–LENE OF WASHINGTON, INC.

v.

## STARWOOD URBAN RETAIL II, LLC.

### No. 132, Sept. Term, 2002.

Court of Appeals of Maryland.

July 29, 2003.

158

Morris Topf, Bethesda, for petitioner.

Kathleen A. Ellis (Regan K. La Testa of Piper Rudnick LLP, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

In this case, the parties disagree as to the construction of a contract providing for parking spaces in a retail shopping plaza located in Chevy Chase, Maryland. Petitioner, Sy–Lene, filed a complaint pursuant to the Maryland Uniform Declaratory Judgments Act, Maryland Code (1974, 1998 Repl. Vol., 2001 Cum.Supp.) § 3–406 of the Courts and Judicial Proceedings Article, seeking construction of the lease agreement and a declaration of the parties' rights under it. The trial court granted respondent Starwood's Motion to Dismiss. The Court of Special Appeals affirmed. We will reverse, finding the lease terminology ambiguous as a matter of law.

## I. Background

Petitioner, Sy–Lene of Washington, Inc., ("Sy–Lene"), operates a retail lingerie shop. In June 1998, Sy–Lene entered into a ten-year lease [1] with Somerset Properties Limited Partnership ("Somerset") to lease retail space in the shopping center located at 5500–5516 Wisconsin Avenue, Chevy Chase. In October 1998, respondent, Starwood Urban Retail ("Star-

---

1. The original term of the lease was from September 1, 1998, through January 30, 2009, with an abatement for September 1, 1998, through December 31, 1998, while Sy–Lene performed renovations to the demised premises.

wood"), purchased the plaza from Somerset and assumed the lease with Sy–Lene. The parties' dispute pertains to Article XL of the lease, which provides, in relevant part: "Tenant shall pay to Landlord $30.00 per month for each employee parking space as is needed for its employees at the Premises.... Landlord reserves the right to limit the number of employee parking spaces to be provided Tenant pursuant to this Article."

On or about January 30, 1999, Sy–Lene requested from Starwood's garage manager five reduced-fee employee parking spaces for February 1999.[2] The garage manager refused Sy–Lene's request, and Sy–Lene contacted Starwood directly. Starwood informed Sy–Lene, by letter, that there was "currently no availability" for employee parking. Over the next two-and-a-half years, Starwood, through its garage manager, denied many of Sy–Lene's requests for monthly reduced-fee employee parking spaces. During that time, Starwood's garage manager charged Sy–Lene as much as $85.00 per month per employee space. Finally, on October 24, 2001, Starwood, through its garage manager, notified Sy–Lene that it would cancel Sy–Lene's monthly parking agreement effective November 1, 2001, and that the only parking available to Sy–Lene's employees would be daily parking at a cost of $8 per day.

On October 29, 2001, Sy–Lene brought suit against Starwood in the Circuit Court for Montgomery County, under the Maryland Uniform Declaratory Judgments Act, Maryland Code (1973, 1998 Repl.Vol., 2001 Cum.Supp.), § 3–406 of the Courts and Judicial Proceedings Article. In its Complaint, in Count I, captioned Declaratory Judgment, Sy–Lene sought a construction of Article XL and a declaration that the lease required Starwood to supply Sy–Lene with at least ten reduced-fee employee parking spaces; in Count II, captioned

---

**2.** Starwood changed garage managers several times between January 1999 and November 2001. None of the garage managers are a party to this suit, and, for simplicity's sake, we will refer to all of them as one entity.

Injunction, Sy–Lene sought an injunction, directing Starwood's parking garage managers to provide a minimum of ten reduced-fee employee parking spaces, enjoining its managers to reflect these reduced fees retroactively and prospectively, and directing Starwood to provide Sy–Lene with detailed information regarding common area maintenance costs, which Sy–Lene was required to pay to Starwood under the lease; and in Count III, captioned Damages, Sy–Lene sought damages for the costs Sy–Lene incurred in paying for parking for its employees, plus court costs and attorneys' fees.

Starwood filed a Motion to Dismiss. Following a hearing on the motion, the court dismissed the Complaint, ruling as follows:

"The Court does not feel that [Article XL] is ambiguous. It is as clear and as plain as day. If there are parking spaces available, the employees can have parking spaces as is needed, but the landlord reserves the right to limit the number, and implicit in that, quite clearly—to limit the number means it can be zero.

"And the plaintiff has failed to state a cause of action as to Count 1. The motion to dismiss is granted.

"As to Count 2—I suppose Count 2 and 3 really follow my ruling with respect to Count 1.

. . .

"Accordingly, I will grant the motion with respect to Count 2. . . .

"And Count 3 asks for damages. Considering the ruling in Count 1 and Count 2, Count 3 is dismissed as well."

The Circuit Court filed a written Order reflecting the oral ruling.

Sy–Lene filed a timely appeal to the Court of Special Appeals, arguing that the trial court erred because it dismissed the complaint without issuing a declaration of the parties' rights under Article XL of the lease, and because under Maryland law, Sy–Lene was entitled to an itemized accounting of common area maintenance costs. In an unreported opinion, a majority of the appellate court panel held

that the trial court properly dismissed the Complaint because the court, at the hearing on the motion, declared the rights of the parties with respect to Article XL of the contract. Quoting from the transcript of the hearing, the majority noted that the trial court determined that Article XL was not ambiguous and that it did not require Starwood to provide any reduced-fee parking for Sy–Lene's employees. With respect to Sy–Lene's request for detailed accounting of the common area maintenance costs, the intermediate appellate court reversed, holding that Sy–Lene was entitled to an accounting of those costs, and that the trial court should not have denied Sy–Lene's request merely because it was improper in form, presented as a request for an injunction rather than as a request for an accounting.[3]

We granted Sy–Lene's petition for writ of certiorari. *Sy–Lene v. Starwood*, 373 Md. 406, 818 A.2d 1105 (2003).

## II. *Standard of Review*

The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law, subject to *de novo* review. *See Langston v. Langston*, 366 Md. 490, 506, 784 A.2d 1086, 1095 (2001); *Wells v. Chevy Chase Bank*, 363 Md. 232, 250, 768 A.2d 620, 629–30 (2001); *Auction & Estate Reps. v. Ashton*, 354 Md. 333, 340, 731 A.2d 441, 445 (1999); *Calomiris v. Woods*, 353 Md. 425, 434–35, 727 A.2d 358, 362–63 (1999). Although the factual findings of the trial court considering parol evidence are to be reviewed under the clearly erroneous standard, such evidence is only admissible after the court finds the contract to be ambiguous. *Calomiris*, 353 Md. at 435, 727 A.2d at 363.

In the case *sub judice*, the trial court dismissed the action but then went on to declare the rights of the parties, ruling that Article XL was not ambiguous and thus Sy–Lene was not permitted to introduce parol evidence. The court also

---

**3.** Neither party sought review of the portion of Court of Special Appeals' ruling dealing with the accounting of the common area maintenance costs.

found that Sy–Lene was not entitled to ten reduced-fee employee parking spaces, and that Starwood could limit the number of such spaces to zero. The Court of Special Appeals, in reviewing the trial court's findings of law with respect to the lease's construction, correctly identified those rulings as findings of law. Nonetheless, in reviewing this legal conclusion, the majority opinion applied the clearly erroneous standard.[4] The court stated:

> "In a declaratory judgment proceeding, a trial court determines both issues of law and fact. *Aetna Casualty & Surety Co. v. Brethren Mutual Ins. Co.*, 38 Md.App. 197, 206 [379 A.2d 1234, 1239] (1977). We will not disturb the trial court's conclusions as to the facts 'unless found to be clearly erroneous.' *Id.* Therefore, on appeal, we examine the trial court's factual conclusions and ascertain whether they were clearly erroneous. *Id.* at 206–07, 379 A.2d 1234.

> "In the instant case, the court determined as a matter of law that the contract did not obligate [Starwood] to provide [Sy–Lene] with ten reduced-fee parking spaces. It was reasonable for the court to find that the contract language in question was not susceptible to more than one meaning. Because the contract was not ambiguous, [Sy–Lene] was not entitled to produce parol evidence to establish supplemental terms.

---

4. Apart from our finding that the trial court's interpretation of the contract amounted to legal error, we additionally find fault in the trial court's dismissal of the declaratory judgment action. The Court of Special Appeals upheld the trial court's dismissal on the ground that the trial court, at the hearing on the motion, declared the rights of the parties. As we recently pointed out, a trial court may not dismiss an action and then declare the rights of the parties. In *Brown v. Fire and Police Employees' Retirement System*, 375 Md. 661, 674, 826 A.2d 525, 533 (2003), we explained that "once a court dismisses an entire action, there is nothing then pending, and the court is without authority to issue an order with respect to the matter." *Id.* at 674, 826 A.2d at 533 (citing *State v. Sampson*, 297 So.2d 120, 122 (Fla.Dist.App.Ct.1974) and *Hagan v. Robert & Co.*, 222 Ga. 469, 150 S.E.2d 663, 665 (1966)). The trial court should not have dismissed the action and the Court of Special Appeals erred in upholding the dismissal.

"[Sy–Lene] asserts that the trial court erred in finding that the lease provision permitting [Starwood] to 'limit' the number of spaces thereby allows it to provide no spaces. Although [Sy–Lene] claims that 'limit' can never mean 'reduce to zero,' it does not cite, nor can we find, any Maryland case law supporting such a proposition. Consequently, it was not in error for the trial court to find that the lease did not prevent [Starwood] from restricting the number of available reduced-fee parking spaces to zero."

As this Court made clear in *Calomiris,* and again more recently in *Lema v. Bank of America, N.A.,* 375 Md. 625, 641, 826 A.2d 504, 513 (2003), an appellate court reviews *de novo* the trial court's findings of law with respect to a contract's ambiguity. "Contract ambiguity . . . is not a factual issue and is not, therefore, subject to the 'clearly erroneous' standard of review." *Id.* at 641, 826 A.2d at 513. Thus, the Court of Special Appeals erred when it employed the clearly erroneous standard in reviewing the trial court's findings of law. We shall review *de novo* the trial court's finding that the contract is unambiguous.

## III. *Discussion*

Before this Court, Sy–Lene contends that the trial court's finding was incorrect because the lease *is* ambiguous, that standard rules of construction support construction in its favor, and that parol evidence should be admitted to determine the intent of the parties.[5]

---

**5.** Although not raised below, Sy–Lene also argues that the landlord's refusal to provide reduced-fee employee parking is unconscionable and violative of the lease's implied covenant of good faith and fair dealing. Starwood contends that Sy–Lene's argument regarding breach of implied covenant of good faith and fair dealing is not properly before the Court, because Sy–Lene failed to raise the issue below, and there are no exceptional circumstances that would warrant the Court reviewing the issue. We agree, and will not address this argument. *See* Maryland Rule 8–131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court.").

Starwood concedes that the Court of Special Appeals employed the incorrect standard of review, but argues that the result was legally correct nonetheless and should be affirmed. According to Starwood, the plain language of Article XL does not prescribe any lower or upper limit on the number of spaces that Starwood must provide, and thus Starwood may limit the number of such spaces to zero. Because the lease is not ambiguous, Starwood argues, parol evidence is not admissible to establish the existence of an oral agreement that requires the landlord provide at least ten reduced-fee employee parking spaces, and Sy–Lene's arguments regarding standard rules of construction are irrelevant.

■ Maryland follows the law of objective contract interpretation. *Long v. State,* 371 Md. 72, 84, 807 A.2d 1, 8 (2002); *Langston v. Langston,* 366 Md. 490, 506, 784 A.2d 1086, 1095 (2001); *County Commissioners v. St. Charles,* 366 Md. 426, 444, 784 A.2d 545, 556 (2001); *Wells v. Chevy Chase Bank,* 363 Md. 232, 250, 768 A.2d 620, 630 (2001); *Village Green v. Randolph,* 361 Md. 179, 189, 760 A.2d 716, 721 (2000); *Auction & Estate Reps. v. Ashton,* 354 Md. 333, 340, 731 A.2d 441, 444 (1999); *Calomiris v. Woods,* 353 Md. 425, 435–36, 727 A.2d 358, 363 (1999); *State v. Attman/Glazer,* 323 Md. 592, 604, 594 A.2d 138, 144 (1991); *Cloverland v. Fry,* 322 Md. 367, 372–73, 587 A.2d 527, 530 (1991); *Feick v. Thrutchley,* 322 Md. 111, 114, 586 A.2d 3, 4 (1991); *General Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985); *Orkin v. Jacobson,* 274 Md. 124, 128, 332 A.2d 901, 903 (1975); *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 328, 301 A.2d 12, 17–18 (1973). The court's duty is to determine the intention of the parties as reflected in the terms of the contract. *County Commissioners,* 366 Md. at 444, 784 A.2d at 556.

■ Under the objective test of contract interpretation, "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract." *Long,* 371 Md. at 84, 807 A.2d at 8 (quoting *Slice v. Carozza Prop., Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693

(1958)). A contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean at the time of execution; rather, "if a written contract is susceptible of a clear, unambiguous and definite understanding ... its construction is for the court to determine." *See Langston*, 366 Md. at 507, 784 A.2d at 1095 (quoting *Wells*, 363 Md. at 251, 768 A.2d at 630); *Auction & Estate Reps.*, 354 Md. at 340, 731 A.2d at 444–45. When the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used. *Langston*, 366 Md. at 506, 784 A.2d at 1095; *Wells*, 363 Md. at 251, 768 A.2d at 630.

 As we summarized in *Calomiris*, when the court is called upon to interpret a contract, its task is as follows:

"Determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give way to what the parties thought that the agreement meant or intended it to mean."

*Calomiris*, 353 Md. at 436, 727 A.2d at 363 (quoting *General Motors*, 303 Md. at 261, 492 A.2d at 1310).

 A contract is ambiguous if it is subject to more than one interpretation when read by a reasonably prudent person. *Langston*, 366 Md. at 506, 784 A.2d at 1095; *County Commissioners*, 366 Md. at 445, 784 A.2d at 556; *Auction & Estate Reps.*, 354 Md. at 340, 731 A.2d at 444; *Calomiris*, 353 Md. at 435, 727 A.2d at 363. "If the contract is ambiguous, the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the

execution of the contract." *County Commissioners*, 366 Md. at 445, 784 A.2d at 556 (quoting *Heat & Power v. Air Products*, 320 Md. 584, 596–97, 578 A.2d 1202, 1208 (1990)).

We turn to the language of the contract, and the heart of the issue before the Court. There is no case law in Maryland construing the term "limit." The Oxford English Dictionary includes the following definitions of the word "limit":

"1. To assign within limits; to appoint, fix definitely; to specify....

"2. To confine within limits, to set bounds to.... Also, to prohibit (a person) *from* something....

"3. To border *upon* (a country)....

"4. To beg within specified limits."

VIII *Oxford English Dictionary* 964 (2d ed.1989). *See also Webster's Third New International Dictionary Unabridged* 1312 (Philip Babcock Gove, ed., Merriam–Webster 1986) (defining "limit" as: "to assign to or within certain limits; fix, constitute, or appoint definitely; to set bounds or limits to; to curtail or reduce in quantity or extent"); *Random House Webster's College Dictionary* 762 (Sol Steinmetz, ed., Random House 2d ed.1997) (defining "limit" as: "to restrict by or as if by establishing limits; to confine or keep within limits"). Similarly, Black's Law Dictionary defines "limit" as: "1. A restriction or restraint. 2. A boundary or defining line. 3. The extent of power, right or authority." *Black's Law Dictionary* 939 (7th ed.1999).

Each of these definitions of the term "limit" incorporates the concept of a boundary or restraint. To limit something is to define its extent, and in so doing, to quantify it. Starwood's suggestion that the concept of elimination is contained within the term limit conflicts with this idea that a limit defines an area or range.

In comparing the terms "limit" and "eliminate," we find the analysis of one of our sister states persuasive. In *Alcoholic Beverage Control Bd. v. Helm Hotel Cocktail Lounge, Inc.*,

357 S.W.2d 891 (Ky.1962), the Court of Appeals of Kentucky [6] interpreted a statute authorizing the state liquor board to limit the number of liquor licenses it issued. The court in *Helm Hotel* held that the agency's power to limit did not include the power to eliminate, stating: "As generally understood, a limitation is a boundary, restriction or circumscription of something. There must always be a base upon which the limitation can operate. The power to limit is not the power to destroy the base." *Id.* at 892.

We agree with Sy–Lene that "right to limit" does not mean "right to eliminate." Under the ordinary meanings of the words, Starwood's right to limit the number of parking spaces did not permit it to reduce that number to zero. The wording of the contract, however, provides no indication as to what limit is acceptable. Sy–Lene asserts that no less than ten spaces were intended as the lowest limit. Starwood disputes that there was any intent to restrict its ability to limit the reduced-fee employee parking spaces. Therefore, we must remand to the trial court, and direct it to determine the parties' intentions at the time of the lease's execution. To this end, and in light of the absence of a quantity in the contract, the trial court may permit the parties to submit parol evidence.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*

---

**6.** Before 1976, the Court of Appeals was the highest state court in Kentucky.