UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1615

ROSCOE G. BARTLETT, JR.; ELLEN BARTLETT;
AMERICAN HERITAGE COMMUNITIES, INCORPORATED,

Plaintiffs - Appellants,

versus

FREDERICK COUNTY, MARYLAND,

Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   William M. Nickerson, Senior District
Judge.  (1:05-cv-03135-WMN)

Argued:  May 24, 2007                   Decided:  August 21, 2007

Before WILLIAMS, Chief Judge, SHEDD, Circuit Judge, and WIDENER,
Senior Circuit Judge.

Reversed by unpublished per curiam opinion.  Chief Judge Williams
wrote a dissenting opinion.

**ARGUED:** Pamela Anne Bresnahan, VORYS, SATER, SEYMOUR & PEASE,
Washington, D.C., for Appellants.  Laura Nachowitz Steel, WILSON,
ELSER, MOSKOWITZ, EDLEMAN & DICKER, L.L.P., Washington, D.C., for
Appellee.   **ON BRIEF:** Elizabeth Treubert Simon, VORYS, SATER,
SEYMOUR & PEASE, Washington, D.C., for Appellants.  Yoora Pak,
WILSON, ELSER, MOSKOWITZ, EDLEMAN & DICKER, L.L.P., Washington,
D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mr. and Mrs. Roscoe Bartlett ("the Bartletts") and American Heritage Communities, Inc. ("American") (collectively "Appellants") appeal the district court's dismissal of their suit for breach of contract and related claims against Frederick County, Maryland ("the County"). For the reasons that follow, we reverse.


I

In December of 1998, the Bartletts entered into a contract ("the Easement") with the County in which they granted the County an easement to install water and/or sewer lines under their property. The Easement contained, <u>inter alia</u>, the following provisions:

   A.   Grantor [the Bartletts] will be permitted, but not
        required, to connect existing structures to the
        sewer line, in accordance with the Water and Sewage
        Plan and Department of Public Works Rules and
        Regulations. All costs associated with any such
        connection will be paid by Grantor, including
        capacity or "tap" fees.
   B.   Grantee [the County] represents unto Grantor that
        the proposed sewer line is designed to include
        capacity sufficient to serve the Grantor's property
        when developed, if developed to a density
        contemplated by the current Comprehensive Plan
        designation for the property Office/Research.
        Additional capacity may be provided if required for
        future development and if available.

J.A. 26.

The Bartletts later entered into a contract with American for the sale of the property subject to the Easement. American sought

3

to acquire the property as part of its plan to build a 100-bed nursing home along with an independent retirement community. After the County denied Appellants the right to access the sewer lines, Appellants filed suit alleging a breach of the Easement and related causes of action. The district court granted the County's motion to dismiss the complaint, concluding that, as a matter of law, the Easement does not grant Appellants the right to access the sewer lines under their property for future development.

II

We review <u>de novo</u> the dismissal of a complaint for failure to state a claim under Rule 12(b)(6). <u>Hinkleman v. Shell Oil Co.</u>, 962 F.2d 372, 378 (4th Cir. 1992). In so doing, we must accept the factual allegations of the complaint as true, and we must affirm the dismissal only if the plaintiffs can prove no set of facts upon which relief can be granted. <u>Id.</u>

Under Maryland law, a contract must be construed as a whole. <u>Gresham v. Lumbermen's Mut. Cas. Co.</u>, 404 F.3d 253, 260 (4th Cir. 2005). Where the contract, read as a whole, "is subject to more than one interpretation . . . by a reasonably prudent person[,]" the contract is ambiguous and the court "must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." <u>Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC</u>, 829 A.2d 540,

4

547 (Md. 2003). We find that the Easement is ambiguous in that it is susceptible to different interpretations. Paragraph B of the Easement provides that "the proposed sewer line is designed to include capacity sufficient to serve the Grantor's property when developed." J.A. 26. The County contends that this language should be read to mean that the County simply agrees that the sewer line will be of a certain capacity. However, it also could be read to mean that a sufficient amount of capacity will be made available to Appellants for future development. That the latter meaning is a reasonable one is indicated by language in the next sentence of Paragraph B which states that under certain conditions not relevant here "additional" capacity may be provided. The provision of "additional" capacity certainly reasonably suggests that the first sentence of Paragraph B provides some initial capacity.

With the language of the Easement capable of bearing a meaning which supports the allegations of Appellants' complaint, we conclude that dismissal of the complaint was error.[1] We do not pass upon the County's remaining arguments in support of

---

[1]The fact that Paragraph A of the Easement clearly grants permission for connection of existing buildings to the sewer line while Paragraph B does not give express permission to connect cannot be read to resolve any ambiguity as a matter of law. This language may reflect nothing more than a temporal distinction (that is, current buildings can connect; future buildings, not yet in existence, will be provided service). In any event, the terms of Paragraph A certainly do not imply as a matter of law that Paragraph B unambiguously denies service to future buildings.

5

affirmance, but leave them for the district court to consider in the first instance.

### III

The judgment of the district court is reversed, and the case is remanded for further proceedings.[2]

REVERSED

---

[2]The district court dismissed Appellants' negligent misrepresentation claim (Count V) on the independent bases that it lacked the particularity required by Fed. R. Civ. P. 9(b) and that it was barred by the Easement's integration clause. Nonetheless, we reverse the dismissal of Count V. Appellants filed their complaint in state court, after which the County removed the case to federal court, triggering the heightened pleading standards of Rule 9(b). In these circumstances, Appellants should be given the opportunity to amend their complaint prior to dismissal. Further, given that we conclude that the Easement is ambiguous, we find that Appellants' negligent misrepresentation survives, notwithstanding the Easement's integration clause.

WILLIAMS, Chief Judge, dissenting:

Today, a majority of this panel holds that a contractual provision guaranteeing a certain amount of "capacity" could be defined as guaranteeing "access." I do not believe the words are synonymous. Because I believe the contract is clear on its face in that it does not guarantee the Bartletts an unqualified right to connect future development to the sewer line, I dissent.

I.

In December 1998, Mr. and Mrs. Bartlett entered into a contract with Frederick County, Maryland. The Bartletts agreed to convey an easement over their property to the County "for the purpose of installation of a water and/or sewer line(s) and necessary appurtenances." (J.A. at 25.) The contract provided that the Bartletts would transfer the land to the County in exchange for the sum of $6,475.00.

The second page of the two-page contract included two additional pertinent clauses. First, Provision A provided:

> Grantor [Bartlett] will be permitted, but not required, to connect existing structures to the sewer line, in accordance with the Water and Sewerage Plan and Department of Public Works Rules and Regulations. All costs associated with any such connection will be paid by Grantor, including capacity or "tap" fees.

(J.A. at 26.) Second, Provision B provided:

> Grantee [the County] represents unto Grantor that the proposed sewer line is designed to include capacity sufficient to serve the Grantor's property when

7

> developed, if developed to a density contemplated by the current Comprehensive Plan designation for the property OFFICE/RESEARCH. Additional capacity may be provided if required for future development and if available.

(J.A. at 26.)

The contract concluded with an integration clause, which explained that the contract contained all the terms of the contract with respect to the obtaining of the easement, but contained "no representations as to any other issues relating to the provision of water or sewer service to the subject property." (J.A. at 26.)

In May 2004, the Bartletts entered into a contract with co-Appellant American Heritage Communities, Inc. for the sale of the subject property. American Heritage planned on acquiring the land as part of its design to build a nursing home and retirement community. As discussed in the majority opinion, however, the County denied any right to access the sewer lines.

On October 17, 2005, Appellants filed suit in the Circuit Court for Frederick County, seeking injunctive and declaratory relief against the County, as well as stating various damages claims. Specifically, the complaint alleged seven claims, which are summarized below:

> Count I – an injunction against the County from taking any further action that is inconsistent with Appellants' rights under the contract.
>
> Count II – a declaration that the contract grants Appellants access to the sewer line.
>
> Count III – money damages to Bartlett for a material breach of the contract.

8

Count IV – money damages to American Heritage as a third party beneficiary for the breach.

Count V – money damages for the County's negligent misrepresentation.

Count VI – an unconstitutional taking claim.

Count VII – an unconstitutional impairment of contract claim.

The County timely removed the action to federal district court for the District of Maryland, based on the complaint's federal claims. The County then filed a motion to dismiss for failure to state a claim upon which relief can be granted.

On April 25, 2006, the district court granted the County's motion to dismiss. First, the district court noted that all of Appellants' claims -- with the possible exception of Count V, the negligent misrepresentation claim -- were contingent on a contract that granted Appellants the sewer access rights they were seeking. If the contract was unambiguously silent on that point, all those claims, which required something akin to a breach of the contract, would, in the district court's opinion, necessarily fail.

After reviewing the language of the contract, the district court found there existed "no right to connect to the public sewer line any structure except for those already on the property at the time the contract was executed." (J.A. at 150.) This led the district court to conclude that there was "no breach of that contract and there [were] no rights, constitutional or otherwise, of which [Appellants] have been deprived." (J.A. at 150.) With

9

respect to the negligent misrepresentation claim, the district court found that Appellants failed to plead the misrepresentation claim with particularity. Alternatively, the district court found that the contract's integration clause foreclosed Bartlett from claiming that he relied on oral statements made by the County during contract negotiations.

II.

We review de novo the district court's dismissal of an action under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). "[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Bominflot, Inc. v. M/V Henrich S, 465 F.3d 144, 145-46 (4th Cir. 2006) (internal quotation marks omitted). In considering the motion to dismiss, a court may only examine the complaint, exhibits attached to the complaint, matters of public record, and judicially noted facts. See Fed. R. Civ. P. 10(c) & 12. When there exists a conflict between the complaint's bare allegations and an exhibit attached to the complaint, the exhibit prevails. Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th

10

Cir. 1991).  Finally, although "we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts."  Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship., 213 F.3d 175, 180 (4th Cir. 2000).

Appellants' brief states six convoluted issues on appeal, most of which account for minor arguments that make up part of a larger, undefined central argument.  The County, responding to Appellants' brief, also makes the case appear more confusing than it is.  Because every claim in the complaint (save the negligent misrepresentation claim and takings claim) fails as a legal matter unless the contract can be read to secure future sewer line access rights to the Bartletts, the chief question (as recognized by the majority) is whether the contract did in fact confer on the Bartletts a right to connect any future built structures to the sewer line.

A.

Because we are concerned with a contract formed in Maryland, we apply Maryland law.  See Kramer v. Bally's Park Place, Inc., 535 A.2d 466, 467 (Md. 1988).  Maryland follows the law of objective contract interpretation.  See, e.g., Long v. State, 807 A.2d 1, 8 (Md. 2002).  Under this theory of interpretation, "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract."  Id. (internal

quotation marks and alternation omitted). Courts must "[d]etermine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." Calomiris v. Woods, 727 A.2d 358, 363 (Md. 1999).

If a contract's language is unambiguous, Maryland courts will not concern themselves with what the parties intended the contract to mean at the time of execution. Rather, when the language is unambiguous, Maryland courts "will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, 829 A.2d 540, 546 (Md. 2003). "If the contract is ambiguous, the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." Id. at 547 (internal quotation marks omitted).

1.

Appellants argue that Provision B was meant to reserve "some right of the Bartlett property owners to access the sewer line." (Appellants' Br. at 15.) They further contend that their complaint provided a reasonable interpretation of the contract, which shows that the contract granted them the right to access the sewer line to develop their property. They attempt to buttress this claim by stating that the County could have used more unambiguous language if it had not intended to grant Bartlett access rights. The majority, however, implicitly rejects these arguments by relying on

12

its own reasoning and reading to discover ambiguity. In my view, however, neither Appellants nor the majority are correct.

The contract states that the Bartletts agreed to transfer the easement in exchange for $6,475.00. Provision A of the contract then states that the Bartletts are permitted "to connect <u>existing structures</u> to the sewer line," in accordance with rules and regulations. (J.A. at 26 (emphasis added).) Provision B, which is the clause the parties primarily contest, states in relevant part that the County represents that the sewer line will be "designed to <u>include capacity</u> sufficient to serve [the Bartletts'] property when developed." (J.A. at 26 (emphasis added).)

I cannot agree that this language is ambiguous. Provision A conferred upon Bartlett a right to connect existing structures. But Provision B confers no rights. Instead, it states merely that the sewer line will be designed in a fashion that -- should the Bartletts want to develop the land -- has the capacity to service future structures. But nothing in Provision B's language can be read as granting Bartlett <u>a right</u> to connect to the sewer line simply because the line will have the capacity to handle the connection. Thus, while the contract conferred upon Bartlett a right to connect <u>existing</u> structures to the land, it did not confer upon him a right to connect <u>future</u> structures.

Appellants claim that this interpretation (which is required by the contract's plain language) renders Provision B meaningless.

That is not so.   It is easy to imagine the Bartletts explaining that they want to be able to connect existing structures (Provision A), but also want to ensure that if they further develop the property, the sewer line will have sufficient capacity to service the development as well.  The County then could have explained that while it was not willing to grant him an unqualified right to connect any hypothetical future structure (which would likely be ultra vires under Maryland law), it could guarantee that the line would at least have the capacity to serve such future hypothetical structures so long as they are "developed to a density contemplated by the current Comprehensive Plan designation for the property." (J.A. at 26 [Provision B].)   Read plainly, then, it is not a meaningless or ambiguous provision.  Although Bartlett would have to follow the normal procedural channels to get connected to the sewer line, he would nevertheless be sure that the line was equipped with the capacity to serve the new structures, provided they were reasonable for the property.

2.

I disagree with the majority's analysis that:

> [Provision B] could be read to mean that a sufficient amount of capacity will be made available to Appellants for future development.  That the latter meaning is a reasonable one is indicated by language in the next sentence of Paragraph B[,] which states that under certain conditions not relevant here "additional" capacity may be provided.

(Ante at 4.)

14

The sentence referenced by the majority states in its entirety: "Additional capacity may be provided if required for future development and if available." (J.A. at 26.) Of course, the majority's reading begs the question of how a provision for additional capacity can be read as creating a right to <u>access</u> that capacity. <u>See</u> <u>Catawba Indian Tribe v. City of Rock Hill</u>, (circulated) (holding that a party could not show that a water contract was impaired by later added impact fees for service connection because the contract related "to solely infrastructure, or capacity"). I cannot fathom how a provision providing for the possibility of additional capacity can be anything more than a provision contemplating the possibility of an increase in the sewer lines "ability for holding, storing, or accommodating." <u>Merriam-Webster's Collegiate Dictionary</u> 182 (11th ed. 2004).

3.

Because, in my mind, the plain language of the contract cannot be read to have granted the Bartletts an unconditional right to connect future structures to the sewer line, the majority of Appellants' claims fail as a legal matter. Count 1 fails because Appellants cannot show that the County has taken actions that interfere with their rights under the contract. Count 2 fails because Appellants cannot show that the contract "permits American Heritage and the Bartletts to use the existing water/sewer lines on the Bartlett Property for the development of a nursing

15

home/continuing care facility." (J.A. at 14.) Counts 3 and 4 fail because they cannot show a "material breach of the contract." (J.A. at 15.) Count 7, the constitutional impairment of contract claim, must also fail as a matter of law. Accordingly, I would affirm the district court's dismissal with respect to Counts 1,2,3,4, and 7.

B.

Claims 5 and 6 of the complaint require further discussion because the plain meaning of the contract does not resolve Appellants' takings and negligent misrepresentation claims. As explained below, I would reverse with respect to the takings claim, but affirm with respect to the negligent misrepresentation claim.

1.

Although part of Appellants' takings claim relies on an alleged "property interest" created by the contract, Appellants contend that their takings claim relies also on later actions that occurred independent of the contract, and therefore should not have been dismissed based simply on the plain meaning of the contract. Appellants are correct.

Appellants allege that sometime after the signing of the contract, the County violated the takings clause by changing the Comprehensive Plan designation from "Office/Research" to "No Planned Development." The crux of this claim seems to be that after granting a special exception to build the nursing home to

16

American Heritage in November 2004, the County then "took" away that property right by denying access to the sewer lines and designating the property "No Planned Service." (J.A. at 18.)

Regardless of this claim's strength on the merits, it does not rely on any interpretation of the contract. Thus, it should not have been dismissed on those grounds. I would therefore reverse with respect to Count 6.[*]

2.

I also disagree with the majority with respect to Appellants' negligent misrepresentation claim. That claim alleges that the County induced the Bartletts into entering the contract by "negligently assert[ing] a false statement . . . that the Bartlett Contract provided that the water/sewer lines would serve [Appellants'] property, when it was developed." (J.A. at 17.)

After Appellants' claim was removed from state court, the district court treated the claim as falling within the ambit of Rule 9(b) of the Federal Rules of Civil Procedure, which provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

---

[*]The County argues that even if it was improper to dismiss the takings claim based on a plain reading of the contract, it was ripe for dismissal on alternative grounds. Namely, the County contends that the "No Planned Service" designation occurred in 2001, and the three year statute of limitations to challenge that change to the Comprehensive Plan has since run. While this may very well be true, the record is unclear as to when Appellants' takings claim accrued. Thus, the County would be free to raise the point on summary judgment after further factfinding by the district court.

17

particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b).

It is an open question in this Circuit whether a negligent misrepresentation claim must be pleaded with particularity. Nevertheless, Appellants do not argue the point, preferring to assume that Rule 9(b) applies. Instead, they argue that the district court erred in dismissing the claim without granting them leave to amend. This claim has some intuitive force.

The majority tells us in normative terms that the district court erred in dismissing this claim because under removal circumstances like these, "Appellants should be given the opportunity to amend their complaint prior to dismissal." (Ante at 5 n.2.) I disagree. While I would agree strongly that a district court would have abused its discretion if it had refused Appellants leave to amend after Appellants requested leave, that simply is not what happened here.

Appellants never requested leave to amend, not even after the County filed its memorandum in support of its motion to dismiss, which contended that the claim should be dismissed for failure to satisfy Rule 9(b). Instead, Appellants argued at the district court that they fully complied with Rule 9(b), even though their complaint fell far short of the Rule's requirements. Furthermore, they did not conditionally ask for leave in case the district court found that they had not complied with the Rule. And after the

18

district court dismissed their action, they did not file a motion to reconsider asking for leave.

Although I would have no trouble concluding that the district court abused its discretion if it denied leave to Appellants, it is far more troubling to suggest that the district court had to sua sponte grant leave when Appellants implicitly waived any desire to amend their complaint.  At some point, a plaintiff has to look out for her own interests, but see Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000) (requiring a district court to sua sponte grant leave under the Federal Rules), and Appellants certainly cannot complain of surprise here, considering the County's motion to dismiss put them on notice of the Rule 9(b) argument and they made no effort to ask for leave.  In these circumstances, I feel that appellate courts "should" treat district courts with more fairness. I would therefore affirm with respect to Claim 5 because Appellants never expressed an interest in amending their complaint; instead, they chose to argue solely that it complied with Rule 9(b).

### III.

In sum, I, like the majority, would reverse with respect to the takings claim.  On every other claim, however, I would affirm the district court.  I therefore respectfully dissent.