*Precision Small Engines, Inc. et al. v. City College Park et al.,* No. 43, September Term 2017.  Opinion by Hotten, J.

**ZONING – COUNTY AUTHORITY – DELEGATION OF POWER –** Pursuant to Land Use Article § 22-104, the District Council for Prince George's County has authority to adopt zoning laws within the County.  Further, pursuant to Land Use Article § 22-119, a municipality within Prince George's County has concurrent jurisdiction with the County to enforce zoning laws within the bounds of the municipality.  However, before a municipality can exercise concurrent authority, the County and municipality must enter into an agreement outlining the parameters of the municipality's enforcement authority.

**ZONING – MUNICIPAL AUTHORITY – RETENTION OF POWER –** Separate and distinct from the concurrent zoning authority permitted by Land Use Article § 22-119, the City of College Park possesses the authority to enact zoning regulations.  Local Government Article § 5-211 authorizes the City of College Park to enact regulations governing the erection of buildings and the authority to enact a building code and regulations governing occupancy and use permits.  This authority is unmodified by the exercise of concurrent jurisdiction provided under Land Use Article § 22-119.

**CONTRACTS – INTERPRETATION – MEMORANDUM OF UNDERSTANDING –** A memorandum of understanding operates as a contract between a County and local Municipality.  Maryland Courts apply an objective theory of contract interpretation.  Under this doctrine, Maryland Courts will seek to interpret a contract using the plain language of the agreement.  If the language is unambiguous, the Court will apply the agreement consistent with the parties' intent.  Therefore, absent evidence to the contrary, Maryland Courts will apply the plain language of the agreement.

Circuit Court for Prince George's County
Case No. CAL14-32376
Argued: December 5, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 43

September Term, 2017

_____

PRECISION SMALL ENGINES, INC.
ET AL.

v.

CITY OF COLLEGE PARK ET AL.

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: February 21, 2018

We must consider the interplay between the enumerated zoning authority granted to Prince George's County ("the County"), the extent of the authority of the City of College Park ("the City") as a municipality within the County, and the rights and authorities reflected in an agreement entered into between the County and the City pursuant to Md. Code (Repl. Vol. 2012) § 22-119 of the Land Use Article ("Land Use"). The parties to this appeal are Precision Small Engines ("PSE"), a tenant to the property at 9651 Baltimore Avenue, College Park, and the owners of the property, Gregory Hnarakis and Thomas Stokes (collectively "Petitioners"), and the County and the City (collectively "Respondents"). The parties contest the County's zoning authority, outlined in Prince George's County Code §§ 27-253, 4-352(a), and the City's authority under Maryland Code (Repl. Vol. 2013) 5-211 of the Local Government Article ("Local Gov't"). We must determine whether the Memorandum of Understanding ("MOU") between the County and the City altered the City's authority to enforce zoning violations within the limits of its municipality. For reasons to be explained, we hold that the MOU does not alter the City's authority, and that the MOU permitted the City to require additional permits under the City Building Code. Accordingly, we shall affirm the judgment of the Court of Special Appeals.

## Background

Petitioners initially challenged citations issued by the City in the District Court of Maryland sitting in Prince George's County. PSE and other occupants of shared property received citations after failing to obtain required City permits. PSE challenged its fines, arguing that portions of the MOU prohibited the City from issuing any occupancy and building permits, including permits authorized under the City Code. On this basis, some,

but not all, of the fines were dismissed. Hnarakis employed the same argument, but it was not successful.

On December 1, 2014, while the disputes were still pending before the District Court for Prince George's County, Petitioners filed an action for declaratory judgment in the Circuit Court for Prince George's County. Petitioners sought a declaration that the terms of the MOU restricted the City from requiring City non-residential occupancy or building permits where occupants previously obtained use and occupancy, or building permits, from the County. Respondents filed a Motion for Summary Judgment on December 4, 2015. On February 18, 2016, the circuit court held a hearing.

In a Memorandum Opinion and Order, issued May 24, 2016, the circuit court decided that the MOU restricted the City from requiring owners or occupants of non-residential properties within the municipal corporate limits to obtain non-residential occupancy permits issued by the City, where such persons have obtained County use and occupancy permits. The court also determined that the MOU restricted the City from requiring owners or occupants of non-residential property within the municipal corporate limits to obtain building, grading, or other construction permits from the City, where persons have obtained permits from the Department of Permits, Inspection, and Enforcement. The circuit court opined that the City's and County's permits virtually serve the same purpose, and the only difference between the permits is that the City permit must be renewed annually after re-inspection, whereas the County permit is issued upon changes in property use or occupancy. However, the circuit court held that the City could exercise

2

its police powers for the purpose of health, safety, and welfare, including annual inspections, and any other purpose not specifically addressed in the Order.

Respondents noted a timely appeal to the Court of Special Appeals. The Court of Special Appeals issued a reported opinion on June 6, 2017, reversing the circuit court's decision. The court reasoned that the plain language of the MOU clearly dictated that the City did not give up any of its power to adopt and enforce its own building code, or its own health, safety, and welfare regulations. *City of Coll. Park v. Precision Small Engines*, 233 Md. App. 74, 87, 161 A.3d 728, 735, *cert. granted sub nom. Precision Small Engines v. Coll. Park*, 456 Md. 57, 170 A.3d 292 (2017). The intermediate appellate court reasoned that the circuit court's ruling deviated from the MOU's plain language, and projected an interpretation outside of the parties' intention. *Id.*

Petitioners now request that this Court determine whether the Court of Special Appeals erred in declaring that the MOU does not restrict the authority of the City to issue non-residential building and occupancy permits.[1] We determine that the Court of Special Appeals properly concluded that the MOU does not limit the City's power to enact additional ordinances. The City is granted enactment power pursuant to several statutes, including Local Gov't § 5-211. Under these statutes, the City may enact regulations that

---

[1] Petitioners sought this Court's review of the following question: Did the Court of Special Appeals err in reversing the decision of the circuit court granting summary judgment in favor of Petitioners, and declaring that the memorandum of understanding between the City and the County restricts the authority of the City to issue non-residential building and occupancy permits?

control the issuance of permits. The MOU only controls power that the County delegated to the City, not power that originates from other sources of law.

## Sources of Zoning Authority

Under Land Use § 22-104, the County Council for Prince George's County, sitting as the District Council, may adopt and amend the County's zoning laws. A zoning law under Land Use § 14-101(q)(1)(2) is defined as, "the legislative implementation of regulations for zoning by a local jurisdiction [and] includes a zoning ordinance, zoning regulation, zoning code, and any similar legislative action to implement zoning controls in a local jurisdiction." Pursuant to that power, the County adopted Subtitle 27 of the Prince George's County Code, which regulates all zoning matters, including use and occupancy permits. County Code § 27-253 provides that:

(a) None of the following activities shall take place unless a use and occupancy permit certifying compliance with this Subtitle has been issued for the activity by the Building Inspector:
(1) Use of a building, structure, or land;
(2) Conversion of a building, structure, or land from one use to another use;
(3) Medical practitioner's, insurance sales, and real estate sales offices;
(4) Conversion of a one-family detached dwelling to include additional dwelling units (by Special Exception).
(b) Use and occupancy permits shall not be required for the following:
(1) One-family dwelling (other than a new one-family dwelling) used for a single family;
(2) Agricultural uses;
(3) Accessory uses (except where a specific use is allowed as accessory to another use); or
(4) Home occupations for which no permit is specifically required, unless requested by the applicant.
(c) All use of the property shall be in conformance with the use and occupancy permit, including the accompanying plans.

4

(d) When an occupant vacates premises, and a different occupant assumes possession of such premises, the new occupant is required to obtain a use and occupancy permit, regardless of whether the use has changed.

(e) No use and occupancy permit shall be issued by the Department of Permitting, Inspections, and Enforcement until after the expiration of the specified appeal period from a Planning Board decision concerning the subject property of the permit, unless the right of appeal has been waived; nor shall any permit be issued during the pendency of any appeal to, or review by, the District Council.

(f) The Chief of Police and the Fire Chief are authorized to direct the Police Department and the Fire/Emergency Medical Services Department respectively, to take all immediate reasonable and necessary action to cease and desist the operation of any activity requiring a use and occupancy permit when a use and occupancy permit has not been issued.

(g) The Chief of Police, the Fire Chief, and the Director of the Department of Permitting, Inspections, and Enforcement are authorized to direct the Police Department, the Fire/Emergency Medical Services Department, and the Department of Permitting, Inspections, and Enforcement, respectively, to take all immediate reasonable and necessary action to cease and desist the operation of any activity requiring a use and occupancy permit when a use and occupancy permit has been issued and is not in compliance with the provisions of this Section and all applicable use and occupancy provisions of the Zoning Ordinance.

(h) The Chief of Police and the Fire Chief are authorized to direct the Police Department and the Fire/Emergency Medical Services Department respectively, to take all immediate reasonable and necessary action to cease and desist the operation of any activity requiring a use and occupancy permit when the activity is found to present an imminent danger and threat to the health, safety, and welfare of the public by not doing so, that there are no other mitigating actions to be taken to resolve the imminent danger and threat to the health, safety, and welfare of the public, and that there are no other reasonable means of preventing further danger and threat to the health, safety, and welfare of the public resulting from the continuation of the activity.

(i) Immediate reasonable and necessary action shall include, but not be limited to: entering the building, structure, and land; securing the building, structure, and land; removing the occupants of the building, structure, and land; padlocking the building, structure, and land; and preventing the use and occupancy of the building, structure, and land.

(j) Actions taken pursuant to Sections 27-253(f), (g), and (h) shall remain in force and effect unless amended or vacated by a decision of the Zoning Hearing Examiner in accordance with Section 27-264.01(g) or by a decision of a court of competent jurisdiction.

Prince George's County Code § 27-253. As indicated by the Court of Special Appeals, "[a] municipal corporation within the County, such as the City, does not have zoning authority except as specifically authorized by State law; however, it has 'concurrent jurisdiction' within its corporate limits to *enforce* County zoning laws." *Precision Small Engines*, 233 Md. App. at 78, 161 A.3d at 730 (quoting [Land Use] § 22-119(a)(2)). Beyond the authority granted by Land Use § 22-104, Land Use § 22-119(b) describes the requirements needed before a municipality may exercise its jurisdiction. Under § 22-119(b), a municipality must enter into an agreement with the County, which must outline the following:

(1) the method by which the county will be advised of citations issued by a municipal inspector;
(2) the responsibility of the municipal corporation or the county to prosecute violations cited by the municipal corporation;
(3) the disposition of fines imposed for violations cited by the municipal corporation;
(4) the resolution of disagreements between the municipal corporation and the county about the interpretation of zoning laws; and
(5) any other matter that the district council considers necessary for the proper exercise of the authority granted by this section.

Land Use § 22-119. The agreement between the County and the City is typically in the form of a MOU, and must sufficiently describe the powers granted to, and the limitations imposed upon the City in enforcing County zoning laws. Once entered, the MOU grants a municipality the power to exercise enforcement authority equal to that of the County. In this case, the County and the City entered into a valid MOU, discussed in detail *infra*.

6

The City also derives its powers to enact local regulations from Local Gov't §§ 5-211, 5-202 and 5-209. Pursuant to Local Gov't § 5-211, a municipality may enact regulations relating to the erection of buildings and signage, and may enact a building code and regulations which relate to occupancy and use permits. Additionally, the City can require inspections of property under this Article. Local Gov't § 5-202 empowers a municipality to adopt ordinances designed to protect "personal property from damage and destruction" as well as for the protection of "the health, comfort, and convenience of the residents of the municipality." Local Gov't § 5-202. Finally, Local Gov't § 5-209 permits a municipality to regulate certain health hazards or other nuisances that may cause unsanitary conditions or conditions detrimental to health. Local Gov't § 5-209. Pursuant to the authority derived therefrom, the City adopted an ordinance regulating use and occupancy permits. Under the City ordinance, any rented residential property or any non-residential property that is required to get a County Use permit must also obtain a City use and occupancy permit. Coll. Park, Md., City Code § 144 (1966).

## Parameters of the MOU

Pursuant to Local Gov't § 22-119, the County Council unanimously approved the MOU on October 22, 2002. On November 19, 2002, the City Council unanimously ratified the MOU, which remains in effect. The MOU provides that the agreement is to run from year to year extending automatically at the conclusion of each term. Either party can void the MOU at the conclusion of a given term. The following provisions of the MOU are relevant to the instant dispute:

7

- Paragraph 1(a) requires the City to enforce the zoning laws effective as of December 1, 2002. The City also gains all enforcement powers then possessed by the County.

- Paragraph 1(b) definitively states that the City's assumption of these duties was not intended to diminish any City power or authority under §§ 8-112.1 or 8-112.3 of the Regional District Act, or any other law.

- Paragraph 2(a) provides that the City is compelled to require compliance on all properties within municipal boundaries, except for construction operations proceeding under a County grading or building permit and uses which are the subject of active use and occupancy permit applications on file with the County Department of Environmental Resources.

- Paragraph 2(c)[2] provides:

  > The City is not authorized to issue building, grading, use & occupancy, or other permits now issued by the County Department of Environmental Resources [now known as DPIE], the City is not authorized to override Department interpretations of the Ordinance in issuing permits, and the City is not authorized to perform inspections for permit applications. The City may initiate and pursue enforcement action for any property which does not have the required permits for its use or uses.

- Paragraph 3(b) restricts the City from imposing stricter standards than those imposed by the County.

---

[2] Paragraph 2(c) serves as the basis for the Petitioners' challenge.

8

- Paragraph 3(c) allows a property owner or occupant to appeal a zoning citation or notice of a violation issued by the City.

- Paragraph 10 provides that the MOU was created for the sole benefit of the enumerated parties and did not create any additional rights for other persons.

The MOU generally restricted the City's enforcement power. Successive paragraphs require the City to file copies of violations with the County, enforce zoning laws consistent with the plain language of the Code, and consult with the County Attorney to ensure consistency.

### Discussion

The City's authority to regulate zoning matters is reserved by various sources of City and State law. Petitioners rely on isolated portions of the MOU, and assert that the MOU, along with the statutory requirements under § 22-119 of the Land Use Article, does not empower the City to adopt its own zoning regulations. Petitioners ask us to reverse the Court of Special Appeals, and follow the analysis outlined by the circuit court, which highlights that there are few differences between the County use and occupancy permit and the City occupancy permit. As such, they each serve the same purpose in violation of the MOU, and the City can only enforce County laws. In turn, Respondents argue that the plain language of the MOU did not require the City to relinquish its authority to require occupancy and building permits under City law. Respondents posit that the Court of Special Appeals' holding was correct. Although the MOU at issue here empowers the City to enforce the County's zoning laws, the City additionally reserves the authority to enforce its own zoning laws. The MOU's plain language elucidates that the parties never intended

9

that the City cede its authority and power to create its own city zoning laws. Therefore, we affirm the Court of Special Appeals.

The plain language of the MOU does not relegate the City's preexisting powers to require building and use permits issued by the City. This Court follows an "objective theory of contract interpretation, giving effect to the clear terms of agreements, regardless of the intent of the parties at the time of contract formation." *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006). "[I]f the language employed is unambiguous, 'a court shall give effect to its plain meaning and there is no need for further construction by the court.'" *Walker v. Dep't of Human Resources*, 379 Md. 407, 421, 842 A.2d 53, 61 (2004). If feasible, we will construe a contract as a whole, "to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect." *Id*. "[T]he determination of whether a contract is ambiguous ... is a question of law ... subject to *de novo* review." *Precision Small Engines*, 233 Md. App. at 85, 161 A.3d at 734 (quoting *Sy–Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 163, 829 A.2d 540, [544] (2003)). In sum,

> A court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

*Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656–57, 890 A.2d 737, 747 (2006). Thus, we must first ascertain the reasonable interpretation of the parties' intent from the MOU's language. If the language is unambiguous, we only need apply the terms.

Following this approach, Petitioners assert that the plain language of the MOU limits the City's enforcement authority. As before the Court of Special Appeals, Petitioners highlight paragraphs 2(c) and 3(b) as clear demarcations that the County intended to restrict the City from imposing requirements that are different or more restrictive than those imposed under County zoning laws. Paragraph 2(c) states, in part, that "the City is not authorized to issue building, grading, use and occupancy, or other permits now issued by the County…" Paragraph 3(b), partially explains, "[n]othing in the Memorandum authorized the City to impose standards or requirements which the Zoning Ordinance does not establish…." Petitioners read these two provisions together to restrict the City from imposing additional requirements than those imposed under County zoning laws. Mainly, the City process requires additional inspections, fees, and compliance with other zoning laws before a permit is issued. These sections do not contain any relinquishment of power by the City in order to gain concurrent enforcement power. Rather, the plain language of the contract demonstrates that the County imposed limitations of the City's enforcement in an effort to maintain its own power with regard to zoning. In doing so, the County ensured that the City could enforce the law, while requiring it to submit to the County's authority. Respondents contend that reading these two paragraphs in isolation, renders a result that

11

the parties did not intend. We agree. Petitioners' reading of the MOU omits key paragraphs that illustrate the parties' intention for the City to retain permit issuing power.

A reading of the MOU in its entirety, demonstrates that the parties intended that the City maintain its authority to enforce its own building and use permit laws, specifically in light of paragraphs 1(a) and 1(b). We have explained that "[e]ffect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Clancy v. King*, 405 Md. 541, 557, 954 A.2d 1092, 1101 (2008) (quoting *Sagner v. Glenangus Farms*, Inc., 234 Md. 156, 167, 198 A.2d 277, 283 (1964)). At the outset, in paragraph 1(a) of the MOU, the agreement states that the City gained "all enforcement powers then possessed by County government [.]" Paragraph 1(b) states that "[t]he City's assumption of these zoning enforcement powers and duties shall not be deemed to diminish any City power or authority under §§ 8-112.1 or 8-112.3 of the Regional District Act, or any other law."[3] The plain language of paragraph 1(a) dictates that the City may undertake the same powers to enforce permitting that the County possessed. Paragraph 1(b) expressly reserves that the City has authority enumerated by any other laws. These paragraphs, considered with paragraphs 2(c) and 3(b), plainly demonstrates that both parties were cognizant of other sources of municipal power and intended for the City to retain that power, while gaining additional power from the County.

---

[3] The Regional District Act empowers specific municipalities including the City of College Park, the authority to enact zoning regulations pursuant to enumerated guidelines. *See generally* Md. Code (Repl. Vol. 2012) § 25-303 of the Land Use Article.

12

Thus, the plain language of the MOU dictates that the parties reasonably intended for the City to retain the right to create and enforce its own zoning laws.

Due to the express language of the MOU and the City's statutorily granted power, the circuit court went beyond the expressed intent of the parties. *See Tomran, Inc. v. Passano*, 391 Md. 1, 14, 891 A.2d 336, 344 (2006) (holding that the cardinal rule of contract interpretation is to give effect to the parties' intentions). The circuit court failed to apply the objective theory of contract interpretation, and in doing so applied a meaning inconsistent with the plain language of the agreement. Additionally, during the hearing, the circuit court did not examine the nature of the relationship between the City and the County. Specifically, the court did not consider the over 4,000 inspections conducted by the City annually and the extent to which the County may have either expressly permitted the City to act, or otherwise ratified the City's actions. Given this volume, it appears that the City was well within the authority granted to it by the County.

The circuit court also overlooked the MOU's express provision that reflected its intended beneficiaries. Generally, only parties to a contract or third-party intended beneficiaries have standing to challenge the validity or application of a contract. *See 120 W. Fayette St., LLLP v. Mayor of Baltimore*, 426 Md. 14, 36, 43 A.3d 355, 368 (2012). Paragraph 10 specifically states that the City and the County are the only beneficiaries of the contract and no other persons have rights that are applicable under the MOU. Assuming *arguendo* that an enforcement issue exists, the City and the County, as parties to the

agreement, would be in the best position to dictate how to construe the terms of agreement

and the appropriate parties to challenge the agreement, not Petitioners.

Finally, the circuit court disregarded the express authority of the City granted under

Local Gov't §§ 5-202, 5-209, and 5-211.  Per these sections, the power of the City to enact

regulations is separate and distinct from power granted by the County in the MOU.  We

quote again from the Court of Special Appeals opinion:

> [T]he MOU is consistent with the statutory grant of authority for municipal
> corporations to exercise concurrent jurisdiction to enforce the County Zoning
> Ordinance.  [Land Use] section 22–119 does not mandate that a municipal
> corporation surrender its powers under the [Local Gov't] Article to regulate
> health, safety, and welfare in order to accept a delegation of authority to
> enforce the County Zoning Ordinance.  Rather, it requires the County and
> the municipal corporation to reach an agreement respecting the division of
> authority between the entities to prevent inconsistent enforcement.  [Land
> Use] § 22–119(b).  If the legislature had intended for the assumption of
> zoning enforcement powers by a municipal corporation to be conditioned
> upon its forfeiting other statutory grants of authority, it would have said so.
> []

*Precision Small Engines*, 233 Md. App. at 86–87, 161 A.3d at 735.  Accordingly, we shall

affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF
SPECIAL APPEALS IS AFFIRMED.
COSTS TO BE PAID BY
PETITIONERS.**

14